**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____

| | |
|---|---|
| BACARDI & COMPANY LIMITED,<br>1000 Bacardi Road<br>New Providence, Bahamas<br><br>and<br><br>BACARDI U.S.A., INC.,<br>(EGS)<br>2100 Biscayne Boulevard<br>Miami, Florida 33137<br><br>     Plaintiffs,<br><br>   v.<br><br>EMPRESA CUBANA EXPORTADORA de<br>ALIMENTOS Y PRODUCTOS VARIOS d/b/a<br>CUBAEXPORT<br>Calle 24, n 55, edif. MINCEX, 8vo, piso.<br>Havana, Cuba<br><br>and<br><br>HAVANA CLUB HOLDING, S.A. d/b/a<br>HCH, S.A.<br>5 Rue Eugène Ruppert L2453<br>Luxembourg<br><br>Defendants. | Civil Action No. 04 CV 519 |

_____

**REPLY IN SUPPORT OF DEFENDANT**
**CUBAEXPORT'S MOTION TO DISMISS**

**TABLE OF CONTENTS**

I.      INTRODUCTION...........................................................................................1

II.     BACARDI'S COUNT I SHOULD BE DISMISSED IN ITS ENTIRETY .........3

   A.   Bacardi Fails to Plead a Cause of Action for Cancellation of
        Cubaexport's HAVANA CLUB Trademark Registration (Count I.A.).........3

      1. HCH Was The Only Party Statutorily Authorized To File The
         Verified Renewal Application.......................................................................3

      2. Wrong Party Renewal Is Not A Valid Reason to Cancel the
         HAVANA CLUB Registration .....................................................................5

   B.   Bacardi Fails to State a Claim For Fraud In Connection With Cubaexport's
        Obtaining and Maintaining The HAVANA CLUB Registration in 1976 and
        1982 (Count I.B.)...........................................................................................6

   C.   Bacardi Fails to Plead That Cubaexport Committed Fraud in Connection With
        Renewing the HAVANA CLUB Registration in 1996 (Count I.C.).............. 9

   D.   Bacardi Fails to State a Cause of Action for Abandonment (Count I.D.) .... 10

      1. Cubaexport Did Not Abandon the "Havana Club" Mark Through An
         Assignment in Gross...................................................................................10

      2. Bacardi's Argument Regarding Abandonment Through Non-Use Is Not
         Properly Before This Court.........................................................................11

   E.   Bacardi Fails to State a Cause of Action for Misrepresentation
        of Source (Count I.E.)...................................................................................12

III.    BACARDI FAILS TO ALLEGE FACTS SUFFICIENT TO SUPPORT
        DECLARATORY JUDGMENT JURISDICTION ...........................................14

   A.   Bacardi Cannot Have An Objectively Reasonable Apprehension
        of Litigation..................................................................................................14

   B.   Bacardi Has Failed To Allege The Requisite Facts To Properly Plead An Intent
        And Ability To Resume Use Of The "Havana Club" Mark ........................ 17

IV.     COUNTS II-V OF THIS ACTION SHOULD BE DISMISSED FOR LACK OF
        PERSONAL JURISDICTION.........................................................................18

   A.   The Determination of Commercial Activity Under the FSIA is Comparable to
        the Determination of Minimum Contacts Under the U.S. Constitution and the
        District of Columbia Long-Arm Statute .................................................... 18

B.     Cubaexport Has Not Waived its Immunity Under
28 U.S.C. § 1605(a)(1) ............................................................................... 20

V.     COUNT II DOES NOT STATE A VALID CLAIM FOR
COMMON-LAW RIGHTS TO THE HAVANA CLUB MARK ..................... 21

A.     Bacardi's Use of the Havana Club Mark is Geographically
Deceptively Misdescriptive ......................................................................... 21

B.     Bacardi's Assertion that Cubaexport Does Not Have Standing
Is Inapplicable ............................................................................................. 23

C.     The Doctrine of Unclean Hands Is Inapplicable .......................................... 24

D.     Bacardi's Reliance on Section 1052(a) is Misplaced ................................. 24

VI.     CONCLUSION ......................................................................................... 25

# TABLE OF AUTHORITIES

*Am. Standard Inc.* v. *Sanitary Wares Mfg. Corp.*,
  3 USPQ2d 1637 (D.D.C. 1987) ............................................................................... 20

*In re Bacardi & Co.*,
  48 USPQ2d 1031 (TTAB 1997) .................................................................21, 22, 25

*In re Boyd Gaming*,
  57 USPQ2d 1944 (TTAB 2000) ............................................................................... 23

*In re Cal. Innovations, Inc.*,
  329 F.3d 1334 (Fed. Cir. 2003) ............................................................................... 23

*In re Caldon Co. Ltd. P'ship*,
  37 USPQ2d 1539 (Com'r Pat. & Trademarks 1995)...........................................4, 5, 6

*Canadian Overseas Ores Ltd.* v. *Compania de Acero del Pacifico S.A.*,
  727 F.2d 274 (2d Cir. 1984) ................................................................................... 20

*Cuban Cigar Brands N.V.* v. *Upmann Int'l, Inc.*,
  457 F. Supp. 1090 (S.D.N.Y. 1978), *aff'd without op*, 607 F.2d 995 (2d Cir.
  1979) .................................................................................................................... 13

*Dickinson* v. *Zurko*,
  527 U.S. 150 (1999).............................................................................................. 20

*First Nationwide Bank* v. *Gelt Funding Corp.*,
  27 F.3d 763 (2d Cir. 1994) ...................................................................................... 7

*GMA Accessories, Inc.* v. *Idea Nuova, Inc.*,
  157 F. Supp. 2d 234 (S.D.N.Y. 2000)........................................................................ 8

*H.J. Inc.* v. *N.W. Bell Tel. Co.*,
  492 U.S. 229 (1989)............................................................................................. 22

*Havana Club Holding, S.A.* v. *Galleon, S.A.*,
  62 F. Supp. 2d 1085 (S.D.N.Y. 1999), *aff'd*, 203 F.3d 116, 129 (2d Cir. 2000) ...15, 23

*Havana Club Holding, S.A.* v. *Galleon, S.A.*,
  961 F. Supp. 498 (S.D.N.Y. 1997)......................................................................... 10

*Havana Club Holding, S.A.* v. *Galleon, S.A.*,
  974 F. Supp. 302 (S.D.N.Y. 1997)................................................................4, 10, 11

*Hishon* v. *King & Spalding*,
  467 U.S. 69 (1984)................................................................................................ 7

*Institut National des Appellations d'Origine* v. *Vintners Int'l Co., Inc.*,
    958 F.2d 1574 .......................................................................................... 23

*Jerome Stevens Pharms., Inc.* v. *Food & Drug Admin.*,
    319 F. Supp. 2d 45 (D.D.C. 2004) ......................................................... 10

*Joint Stock Soc'y* v. *UDV N. Am., Inc.*,
    53 F. Supp. 2d 692 (D. Del. 1999), *aff'd*, 266 F.3d 164 (3d Cir. 2001) ...............16, 17

*Pro-Football, Inc.* v. *Harjo*,
    57 USPQ2d 1140 (D.D.C. 2000) .............................................................. 22

*Pro-Football, Inc.* v. *Harjo*,
    284 F. Supp. 2d 96 (D.D.C. 2003) ........................................................... 22

*Sigma-Tau Industrie Farmaceutiche Riunite, S.P.A.* v. *Lonza, Ltd.*,
    36 F. Supp. 2d 26 (D.D.C. 1999) ............................................................. 18

*Stabilisierungsfonds fur Wein* v. *Kaiser Stuhl Wine Distribs. Pty. Ltd.*,
    647 F.2d 200 (D.C. Cir. 1981) ................................................................. 19

*Starter Corp.* v. *Converse, Inc.*,
    84 F.3d 592 (2d Cir. 1996) ...............................................................17, 18

*Tex. Trading & Milling Corp.* v. *Fed. Republic of Nig.*,
    647 F.2d 300 (2d Cir. 1981) .................................................................... 20

*United States ex rel. Totten* v. *Bombardier Corp.*,
    286 F.3d 542 (D.C. Cir. 2002).............................................................. 8, 9

*World Wide Minerals, Ltd.* v. *Republic of Kaz.*,
    296 F.3d 1154 (D.C. Cir. 2002) ............................................................... 21

*Zwack* v. *Kraus Bros. & Co., Inc.*,
    237 F.2d 255 (2d Cir. 1956) ...................................................................... 7

## STATUTES

15 U.S.C.
    § 1052(a).........................................................................................24, 25
    § 1057(c)............................................................................................... 21
    § 1058.................................................................................................. 6, 8
    § 1058(a) ................................................................................................. 6
    § 1064(3)............................................................................................. 5, 6
    § 1126(c)............................................................................................... 13
    § 1126(e)............................................................................................. 6, 8

28 U.S.C.
  §§ 1330(a) ............................................................................................................. 20
  §§ 1330(c) ............................................................................................................. 21
  § 1602 ................................................................................................................... 20
  §§ 1603(d)-(e) ....................................................................................................... 19
  § 1605(a)(2) .....................................................................................................18, 19
  § 1607 ................................................................................................................... 21

Federal Rule of Civil Procedure
  Rule 9(b) ................................................................................................................. 8

## MISCELLANEOUS

4A Rudolf Callmann, *Callmann on Unfair Competition, Trademarks and
  Monopolies* (4th ed. 2004).................................................................................. 22

2 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* (4th ed.
  2004) .............................................................................................................11, 12, 25

5 J. Thomas McCarthy, *McCarthy on Trademarks & Unfair Competition* (4th ed.
  2004) ...............................................................................................................16, 24

6 J. Thomas McCarthy, *McCarthy on Trademarks & Unfair Competition* (4th ed.
  2004) ................................................................................................................... 25

Defendant Cubaexport submits the following Reply in Support of its Motion to Dismiss the Complaint filed by Bacardi & Company Limited and Bacardi U.S.A., Inc. (collectively, "Bacardi").

## I.      INTRODUCTION

Cubaexport moved to dismiss Bacardi's Complaint on the grounds that (a) Count I fails to state a claim for cancellation of Cubaexport's HAVANA CLUB registration for reasons commensurate with the TTAB's decision to dismiss Bacardi's petition to cancel the registration; (b) as a matter of law the court does not have subject matter jurisdiction over Counts II-IV because Bacardi cannot have a reasonable apprehension of suit and has failed to allege an imminent intent and ability to commence use of the "Havana Club" mark in commerce; (c) as a matter of law the court does not have personal jurisdiction over Cubaexport with respect to Counts II-V based on the Due Process Clause and the D.C. long-arm statute; and (d) Count II fails to state a claim for common law rights to the "Havana Club" mark because Bacardi's use of the mark is geographically deceptively misdescriptive.[1]

Bacardi's Opposition fails to assert arguments sufficient to overcome Cubaexport's motion to dismiss.  First, with respect to Count I, Bacardi either misrepresents or ignores the decisions of the Southern District of New York ("Southern District") and the TTAB regarding both tribunals' refusal to cancel Cubaexport's

_____

[1] Cubaexport also joined HCH's Motion to Dismiss on the grounds that (a) Congress has the power to maintain the HAVANA CLUB registration on the Principal Trademark Register (and thus Count V of Bacardi's Complaint fails to state a claim) and (b) Bacardi's violations of the Government in the Sunshine Act provided a further basis for upholding the TTAB's denial of Bacardi's petition to cancel the HAVANA CLUB trademark registration.  Cubaexport continues to join in those motions, and respectfully refers the Court to HCH's Reply Memorandum addressing those issues.

HAVANA CLUB registration based on the failure of Cubaexport to renew it.  Moreover, without any authority, Bacardi incorrectly bases its fraud allegations on the Cuban government's alleged confiscation of JASA's assets despite the undisputable fact that Cubaexport complied with the Lanham Act and PTO procedures in obtaining and maintaining its registration.  In addition, Bacardi argues that Cubaexport committed fraud against the PTO based on its allegedly fraudulent actions before OFAC.  However, judicial review of OFAC decisions regarding the granting and revoking of licenses is prohibited. Next, Bacardi bases its abandonment argument on an assignment in gross theory, which has been rejected by both the Southern District and the TTAB.  As a matter of law, there can be no assignment in gross because Cubaexport has no assets in the U.S.  Moreover, Bacardi's argument regarding abandonment through non-use is not appropriately before this court.  It is a new legal theory not raised before the TTAB, and, therefore, is prohibited as a matter of law on appeal.  Finally, Bacardi has not alleged a claim for misrepresentation because Cubaexport's colorable claim of ownership is based on undisputed facts supported by allegations in the Complaint.

Second, with respect to Counts II-IV, Bacardi has failed to establish subject matter jurisdiction.  Bacardi has conceded that, based on Section 211, it cannot have an objectively reasonable apprehension of suit.  Moreover, the Southern District infringement litigation and the disputes in foreign countries between the parties regarding rights to the "Havana Club" mark cannot establish a reasonable apprehension of suit.  Section 211 was not passed until after HCH brought the infringement action against Bacardi, and Section 211 is not applicable in any other country besides the U.S.  Bacardi also cannot establish that it has an imminent intent and ability to commence use of the "Havana Club" mark in

commerce, because it has failed to allege that it has taken any actions to demonstrate an intent to use.

Third, with respect to Counts II-V, Bacardi argues that the court has personal jurisdiction over Cubaexport based on two exceptions to the Foreign Sovereign Immunities Act. However, regardless of whether the determination of personal jurisdiction over Cubaexport is based on the U.S. Constitution, the D.C. long-arm statute or the Foreign Sovereign Immunities Act, Bacardi has failed to establish that, indeed, the court does have personal jurisdiction.

Finally, with respect to Count II, Bacardi argues that its use of the "Havana Club" mark is not geographically deceptively misdescriptive, and Cubaexport's assertions to the contrary are based on unsupported factual assertions. However, Cubaexport's factual assertions are based on the TTAB's rejection of Bacardi's trademark applications for marks using the term "Havana" in connection with rum. The TTAB held that such marks were geographically deceptively misdescriptive. The TTAB decision must be given deference by the court.

## II.     BACARDI'S COUNT I SHOULD BE DISMISSED IN ITS ENTIRETY

### A.     Bacardi Fails to Plead a Cause of Action for Cancellation of Cubaexport's HAVANA CLUB Trademark Registration (Count I.A.)

#### 1.     HCH Was The Only Party Statutorily Authorized To File The Verified Renewal Application

In 1996, HCH was the record owner of the HAVANA CLUB trademark registration, and therefore the proper party to renew the registration. Compl. ¶ 77.[2] However, Bacardi asserts that the Southern District decision in *Havana Club II* mandates

---

[2] All cites to "Compl. ¶ __" refer to Bacardi's Complaint in this action.

the cancellation of the HAVANA CLUB registration.  Opp. at 23[3].  Bacardi's basis for its

assertion is the Southern District's holding that Cubaexport's 1993 assignment of the

HAVANA CLUB trademark registration was null and void and the rights to the

registration reverted to Cubaexport.  *Havana Club Holding, S.A. v. Galleon, S.A.*, 974 F.

Supp. 302, 311 (S.D.N.Y. 1997) ("*Havana Club II*").  Thus, Bacardi concludes Cubaexport

was the rightful owner of the registration in 1996, and since Cubaexport did not renew it,

the PTO should cancel the registration.  Such a result would be contrary to law.

      The Southern District's 1997 decision did not, and indeed could not, alter

who was the record owner of the HAVANA CLUB registration in 1996.  In 1996, HCH,

the record owner, renewed the registration.  Compl. ¶ 80.  By the PTO's own terms, this

created a valid renewal.  In essence, Bacardi seeks a determination that, during the renewal

period, no party could have renewed the HAVANA CLUB mark.[4]  However, such a result,

as the TTAB correctly determined, "would inject confusion and uncertainty in the

trademark renewal process."  TTAB Decision at 38.[5]

      In addition, the authority Bacardi relies on for the proposition that

retroactive changes in ownership affect the otherwise proper renewal of a trademark is not

on point.  Opp. at 21-22.  In *Caldon*, the court held that ***at the time of the actual filing*** of

---

[3] Citations to "Opp. at __" refer to Bacardi's Opposition to Cubaexport's Motion to Dismiss.

[4] Bacardi's assertion that Cubaexport could have renewed the HAVANA CLUB mark, because "Cubaexport knew [that] the transfers were invalid, Opp. at 24, is without merit and is addressed in Sections II.B. and II.C., *infra* at 7-11.

[5] Citations to "TTAB Decision at ___" refer to the TTAB's decision denying Bacardi's motion for summary judgment that the HAVANA CLUB registration should be cancelled, which is attached to the Stasio Declaration in Cubaexport's Motion to Dismiss as Exhibit 2.

the renewal, the record owner of the patent was not the party that filed for renewal. *See In re Caldon Co. Ltd. P'ship*, 37 USPQ2d 1539, 1541 (Com'r Pat. & Trademarks 1995) (where owner of record in the PTO was different than the entity that filed the renewal and no evidence of a transfer was present, the PTO cancelled the registration).

Bacardi then maintains that its renewed attempt to cancel the HAVANA CLUB registration should not be dismissed as a matter of law because the TTAB supposedly *sua sponte* "granted summary judgment in favor of Cubaexport and HCH" without determining whether there were any factual issues in dispute. Opp. at 23-24. Therefore, Bacardi asserts that it is entitled to additional discovery. *Id.* To the contrary, the TTAB did not grant summary judgment in favor of Cubaexport and HCH. Rather, the TTAB correctly denied Bacardi's motion for summary judgment as a matter of law, thereby finding that there were no disputed issues of fact. TTAB Decision at 38-39. Bacardi cannot now assert on appeal that there are disputed issues of fact when it argued there were none in the proceeding below. Bacardi's argument is contradictory and thus, its renewed attempt to cancel the HAVANA CLUB registration should again be dismissed as a matter of law.

### 2. Wrong Party Renewal Is Not A Valid Reason to Cancel the HAVANA CLUB Registration

Bacardi ignores that incontestable registrations, such as Cubaexport's "Havana Club" mark, cannot be cancelled because of wrong-party renewal.[6] *See* 15 U.S.C.

---

[6] Bacardi's statement that the TTAB rejected Cubaexport's argument that wrong-party renewal was not a ground for cancellation is incorrect. Rather, the TTAB construed Bacardi's "motion as being based on [the Southern District's] order directed to the validity of the registration, and not based on the 'improper renewal of a registration.'" TTAB Decision at 35. Thus, the TTAB did not apply the rules governing wrong-party renewal.

§ 1064(3) (Supp. 2004); *see also* Opp. at 24-25. Instead, Bacardi argues that it is not

seeking cancellation, but merely seeks to "confirm that the registration had already expired

by [Cubaexport's] failure to renew."[7] *Id*. at 25. Bacardi's argument is disingenuous.

The Lanham Act states that wrong-party renewal causes a registration to be

cancelled, not expire. *See* 15 U.S.C. § 1058(a) (Supp. 2004) ("the registration of any mark

shall be cancelled by the Director for failure to comply with the provisions of subsection

(b) of this section"); *see also Caldon*, 37 USPQ2d at 1541 (where wrong party renewed

trademark, the "registration will be cancelled in due course"). As such, wrong-party

renewal is an improper ground for contesting Cubaexport's mark under 15 U.S.C. §§ 1058

and 1064(3).

> **B.     Bacardi Fails to State a Claim For Fraud In Connection With Cubaexport's Obtaining and Maintaining The HAVANA CLUB Registration in 1976 and 1982 (Count I.B.)**

Cubaexport obtained and maintained the HAVANA CLUB registration by

complying with the Lanham Act and PTO procedure. *See* 15 U.S.C. §§ 1058 and 1126(e);

Compl. ¶ 115; *infra* at 8 n.10. Bacardi's entire fraud claim depends on this court's finding,

as a matter of law, that Cubaexport is not the owner of the HAVANA CLUB registration,

because the Cuban government confiscated JASA's property within Cuba. Opp. at 28-29.

Specifically, Bacardi asserts that Cubaexport committed fraud on the PTO in 1976 and

1982 because "Cubaexport knew that its claims to ownership of the U.S. HAVANA CLUB

mark derived from the confiscation of JASA's assets . . . and it also knew that U.S. courts

---

[7] Again, the underlying assumption of Bacardi's assertion is that Cubaexport should have been the party to renew the registration based on the Southern District's ruling, and because they did not renew, the mark expired. As addressed in Section II.A.1., *supra* at 3-5, this assertion is without merit.

had consistently held that they would not recognize claims of title to U.S. property based on a Cuban confiscation." Opp. at 28. There is no authority for this conclusion. The only legal authority Bacardi cites for this proposition involves the adjudication of rights to assets within the U.S. *existing* at the time of the confiscation. Opp. at 28-29; s*ee e.g., Zwack v. Kraus Bros. & Co., Inc.*, 237 F.2d 255, 257 (2d Cir. 1956) (seeking damages resulting from infringement and unfair competition of trademark registered in U.S. prior to confiscation). Here, by contrast, there was never any attempts to confiscate or deprive JASA of any property, including trademark registrations, with a situs in the U.S. existing at the time of the confiscation. Bacardi's reliance on these cases is, therefore, inapposite. Bacardi asserts that Cubaexport does not apply the correct standard for a motion to dismiss, and all of Cubaexport's assertions are "inappropriate" and amount to "factual assertion[s], contradicted by the Complaint."[8] Opp. at 26. Bacardi is wrong. Although the facts in the Complaint must be taken as true, *see Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984), the court is not required to accept as true Bacardi's "conclusions of law or unwarranted deductions of fact." *First Nationwide Bank v. Gelt Funding Corp.*, 27 F.3d 763, 771 (2d Cir. 1994).

Indeed, Bacardi does make unwarranted deductions of fact. Bacardi's allegation that "Cubaexport lied in its application to the PTO by falsely claiming that Cubaexport owned the "HAVANA CLUB" trademark for rum in the United States, knowing that JASA was the true owner of that mark" is an unwarranted deduction of fact.

---

[8] However, Bacardi does not even attempt to challenge Cubaexport's assertion that Cubaexport's foreign use was continuous as of 1982. *See* Cubaexport's Motion to Dismiss Bacardi's Complaint ("Motion") at 16-17.

Opp. at 27.  In 1974, Cubaexport had no reason to believe[9] that JASA had any rights to the "Havana Club" mark in the U.S. based on the following undisputed facts: (1) no one in the United States had a registration for the "Havana Club" mark,[10] TTAB Decision at 45; and (2) the mark had not been used in commerce in the U.S. for nearly fifteen years. Compl. ¶ 25.  Bacardi asks the court to ignore these undisputed facts.  However, these facts are essential to the proper determination of a motion to dismiss.

Without Bacardi's conclusions of law and unwarranted deductions of fact, Bacardi cannot dispute that Cubaexport obtained and maintained the HAVANA CLUB registration mark by complying with the Lanham Act and PTO procedure after JASA's registrations expired.[11]  *See* 15 U.S.C. §§ 1058 and 1126(e); Compl. ¶ 115; *supra* at 8 n.10. Thus, Bacardi cannot plead that Cubaexport committed fraud before the PTO in 1976 or 1982.[12]

---

[9] The TTAB was correct to point out that "Cubaexport merely represented that it ***believed*** that it was the owner of the ["Havana Club"] mark" and did not represent "that it ***owned***" said mark.  TTAB Decision at 41.  The TTAB went on to state that "[t]his difference is significant because '[w]here there is reasonable doubt as to who is the owner of a mark, it is not fraud to state in the application oath that one 'believes himself . . . to be the owner of the mark sought to be registered.'''"  *Id.* at 42 (citing 5 J. Thomas McCarthy, *McCarthy on Trademarks & Unfair Competition* § 31:71 (4th ed. 1997)).

[10] We note that by June 12, 1974, the filing date of Cubaexport's U.S. application, all of JASA's U.S. registrations had expired.

[11] Indeed, nothing prevented JASA from renewing its U.S. registration.  Instead, JASA, simply let its U.S. registrations lapse.

[12] Further, Bacardi fails to meet Rule 9(b)'s heightened pleading standard which "appl[ies] to each element of the fraud claim," by failing to plead both the knowledge and damages elements of fraud with particularity.  *See GMA Accessories, Inc.* v. *Idea Nuova, Inc.*, 157 F. Supp. 2d 234, 243 (S.D.N.Y. 2000); Fed. R. Civ. P. Rule 9(b); Motion at 13-14. Bacardi fails to plead that Cubaexport knew when it filed its application that JASA had any right to use the mark in the U.S.  *See* Motion at 15; TTAB Decision at 45-46. Accordingly, Bacardi's reliance on *United States ex rel. Totten v. Bombardier Corp.*, 286

(Continued…)

**C.**   **Bacardi Fails to Plead That Cubaexport Committed Fraud in Connection With Renewing the HAVANA CLUB Registration in 1996 (Count I.C.)**

HCH was the owner of record when it renewed the HAVANA CLUB registration.  Compl. ¶ 77.  Thus, the TTAB concluded that Bacardi did not state a claim for fraud.  TTAB Decision at 50-52.  Bacardi's sole basis for its fraud claim is that Cubaexport committed fraud in obtaining its OFAC license, thus HCH was not really the owner of record when it renewed the registration.  Opp. at 29-30.  Specifically, Bacardi's allegation that HCH, "acting in concert with Cubaexport," committed fraud when it renewed its registration in 1996 by "falsely claiming that HCH was the owner of the U.S. HAVANA CLUB Registration" hinges upon a finding that Cubaexport and HCH committed fraud on OFAC when they "knowingly applied for a[] . . . license by filing an application that contained material misrepresentations, in a conspiracy to maintain the . . . [r]egistration in HCH's name."  Opp. at 29.  Bacardi is simply disguising its claim of fraud on OFAC as a claim of fraud on the PTO.  However, Bacardi has raised its claims of fraud on OFAC before both the Southern District and the TTAB to no avail.

As a matter of law, the court cannot review OFAC decisions relating to the granting and revoking of licenses.  The Southern District held that Bacardi's OFAC fraud claims were not reviewable because: (1) "OFAC's issuance of or failure to revoke a license

_____

(…Continued)
F.3d 542, 552 (D.C. Cir. 2002) is entirely misplaced.  *Totten* does not stand for the proposition that a party such as Bacardi may omit from a fraud claim an essential element of the claim, *i.e.*, the knowledge element.

Bacardi also does not properly plead the damages element.  Although Bacardi states in its Opposition that "Cubaexport's misstatements caused damages to JASA and Bacardi," Opp. at 27, none of the paragraphs Bacardi cites to in its Complaint, ¶¶65, 76-88, 93-94, in support of this claim state this, much less with any sort of particularity.

rests upon foreign policy considerations and judgments of the Executive Branch that should not be disturbed by the courts"; and (2) "the Administrative Procedure Act ("APA") precludes judicial review of matters 'committed to agency discretion by law.'" *Havana Club Holding, S.A. v. Galleon, S.A.*, 961 F. Supp. 498, 503 (S.D.N.Y. 1997) ("*Havana Club I*") (citation omitted); *see Havana Club II*, 974 F. Supp. at 306; *Jerome Stevens Pharms., Inc. v. Food & Drug Admin.*, 319 F. Supp. 2d 45, 54 (D.D.C. 2004) ("A court may not review an agency action . . . where . . . agency action is committed to agency discretion by law.") (citation omitted).

The TTAB also dismissed Bacardi's allegations of fraud on OFAC for failing to state a proper claim of false or fraudulent renewal, stating that the TTAB was not the proper tribunal to determine whether "the attempted transfer of the . . . registration was fraudulent." TTAB Decision at 50-52. With no other basis for its claims of fraud, Bacardi's claims should be dismissed.[13]

    **D.**    **Bacardi Fails to State a Cause of Action for Abandonment (Count I.D.)**

        **1.**    **Cubaexport Did Not Abandon the "Havana Club" Mark Through An Assignment in Gross**

Bacardi's theory of abandonment *via* assignment in gross, Compl. ¶¶ 131-132, was raised, and rejected, before the Southern District. *Havana Club II*, 974 F. Supp. at 312 n.9. The Southern District determined that, given the "unique circumstances of this matter," assignment in gross was, as a matter of law, impossible:

_____

[13] Bacardi fails to address Cubaexport's assertion that Bacardi failed to plead any allegations to support that Cubaexport made misrepresentations to OFAC. Motion at 17-18; Opp. at 29-30.

> Cubaexport and Plaintiffs never had assets in the United States.  While the
> Havana Club trademark may be recognizable by U.S. consumers, the
> embargo has prevented Plaintiffs and Cubaexport from importing,
> distributing, selling, or maintaining any assets in this country.  ***Thus, it was
> impossible for the Plaintiffs and Cubaexport to have separated the mark
> from the business assets when no assets existed in the United States.***

*Id.* (emphasis added).  Similarly, when Bacardi asserted before the TTAB that an

assignment in gross was created by separation of the "Havana Club" mark from

Cubaexport's business assets, the TTAB disagreed, directly citing the Southern District.

TTAB Decision at 53.  As a matter of law, Cubaexport could not have abandoned the

"Havana Club" mark based on an assignment in gross.

Bacardi's theory of abandonment based on the lapse of Cubaexport's

registration is identical to its cancellation theory described in Section II.A.1., *supra* at 3-5.

Based on the Southern District's decision, Bacardi claims that the transfer of the "Havana

Club" mark from HCH back to Cubaexport caused an abandonment of the mark, because

Cubaexport had "allow[ed] the aforesaid federal registration to lapse."  Compl. ¶ 133.  For

the same reasons discussed in Section II.A.1., *supra* at 3-5, the court should dismiss Count

I.D. of Bacardi's Complaint.

> **2.  Bacardi's Argument Regarding Abandonment Through Non-
> Use Is Not Properly Before This Court**

By urging for the first time on appeal that the HAVANA CLUB registration

should be cancelled because Cubaexport abandoned the mark *through non-use*, Opp. at 32,

Bacardi is raising a new legal ground for cancellation it did not raise in the TTAB, where it

pleaded that the registration should be cancelled because Cubaexport abandoned the mark

*by means of an assignment in gross without goodwill.*  TTAB Decision at 52-53; *see, e.g.*,

2 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* §§ 17:5, 17:8-9,

18:17 (4th ed. 2004) (distinguishing between abandonment through non-use and abandonment through assignment in gross without goodwill).

Bacardi contends it is presenting new evidence in support of a claim it already pleaded.  Opp. at 36.  That is not so.  Facts pleaded in support of Bacardi's new legal ground for cancellation (abandonment through non-use) are not new evidence offered in support of its original different ground for cancellation (abandonment through assignment in gross without goodwill).

Moreover, Count I.D. of the Complaint is, according to the Complaint itself, an "APPEAL FROM THE TTAB DECISION" in which the TTAB declined to cancel the HAVANA CLUB registration on any of the grounds Bacardi raised in the TTAB proceeding.  Compl. ¶ 106 and ¶¶ 130-134.  Bacardi could have raised its new ground for cancellation (abandonment through non-use) in the TTAB proceeding.  Instead, it raised a different ground: abandonment through assignment in gross without goodwill.  It may not now raise its new ground for cancellation under the guise of joining a new claim for relief to the cancellation grounds it elected to raise in the TTAB.

**E.      Bacardi Fails to State a Cause of Action for Misrepresentation of Source (Count I.E.)**

Cubaexport asserts that Bacardi fails to plead a claim for misrepresentation of origin, because Cubaexport has a colorable claim of ownership based on its HAVANA CLUB registration.  Motion at 21-22.  Bacardi asserts that Cubaexport's colorable claim of ownership contradicts "facts" alleged in its Complaint.  Opp. at 31.  However, Bacardi fails to explain which alleged "facts" Cubaexport contradicts.  Indeed, the only facts relevant to Cubaexport's colorable claim of ownership are undisputed:

- JASA's U.S. HAVANA CLUB registration expired in 1973 – a year before Cubaexport applied for a registration in the U.S.  Compl. ¶ 42.

- After that expiration, Cubaexport applied for and received a Cuban registration for the "Havana Club" mark.  Compl. ¶ 115.

- Cubaexport obtained its U.S. registration for HAVANA CLUB under §§ 44(c) and (e) of the Lanham Act based on its Cuban registration.  15 U.S.C. § 1126(c); Compl. ¶ 120. (1998).

These three undisputed facts establish, as a matter of law, that Cubaexport has a colorable claim of ownership.

Moreover, Bacardi's reliance on *Cuban Cigars* is misplaced.  Opp. at 31. The court, in canceling defendants' mark, held that defendants were misrepresenting the source of its product because the defendants (1) attempted to prevent plaintiff's continued use; (2) blurred the distinction between the parties' products in the U.S.; and (3) traded upon renown and reputation of plaintiff.  *Cuban Cigar Brands N.V. v. Upmann Int'l, Inc.*, 457 F. Supp. 1090, 1101 (S.D.N.Y. 1978), *aff'd without op.*, 607 F.2d 995 (2d Cir. 1979). Here, however, the facts are clearly different.  First, Bacardi has failed to allege continuous use of the "Havana Club" mark.  Second, neither Bacardi nor Cubaexport sell rum in the U.S. or use the "Havana Club" mark.  Finally, as a result of these two facts, Bacardi has not established any renown or reputation in the U.S.  Accordingly Bacardi cannot, as a matter of law, make out a claim of misrepresentation.

III.    **BACARDI FAILS TO ALLEGE FACTS SUFFICIENT TO SUPPORT DECLARATORY JUDGMENT JURISDICTION[14]**

   A.    **Bacardi Cannot Have An Objectively Reasonable Apprehension of Litigation**

Bacardi concedes that its Complaint fails to allege (1) any conduct on the part of Cubaexport that would indicate an intent to sue, and (2) indeed, that Cubaexport has taken any action in the past seven years (since rights to the U.S. registration reverted back to Cubaexport) that would give rise to a reasonable apprehension of suit.  *See generally* Opp. at 15-18.

Instead, Bacardi asserts that its objectively reasonable apprehension of suit is based on HCH's and HCI's infringement action seven years ago in the Southern District, as well as various foreign disputes with Bacardi over the rights to the "Havana Club" mark.[15]  Opp. at 15-16.  Both of these reasons are undermined by the fact that Cubaexport has not made a threat to Bacardi throughout those seven years and by the highly significant fact alleged in Bacardi's Complaint, which Bacardi now ignores, that Section 211 prevents Cubaexport from enforcing its trademark rights.  Compl. ¶¶ 38-42.

HCH and HCI brought their action in the Southern District prior to the passage of the Section 211 legislation.  During the litigation, Section 211 was passed.

---

[14] Bacardi has failed to even address any of the facts that support Cubaexport's assertion that even if the court finds that Bacardi has pled facts sufficient to show an actual case or controversy, the court should exercise its discretion to refuse subject matter jurisdiction. Motion at 34-36.

[15] Bacardi's unsupported assertion that Cubaexport's defense of its rights at the TTAB is enough to give Bacardi an objectively reasonable apprehension of suit is ridiculous.  Opp. at 17.  Of course Cubaexport is going to defend its rights to a valid U.S. trademark registration in light of Bacardi's petition to cancel.  Bacardi cites no authority to the contrary.  In each of the five cases cited in Opp. at 17, the declaratory judgment plaintiff was placed in apprehension of suit by *defendant's*, not its own, prior resort to litigation.

HCH and HCI challenged Section 211, but the Southern District held, and the Second Circuit affirmed, that Section 211 did indeed bar HCH and HCI from enforcing their trademark rights. *Havana Club Holding, S.A. v. Galleon, S.A.*, 62 F. Supp. 2d 1085, 1091 (S.D.N.Y. 1999) ("*Havana Club III*"), *aff'd*, 203 F.3d 116, 129 (2d Cir. 2000). Similarly, all the foreign proceedings involving the "Havana Club" mark have been in countries where Section 211 is not the law. Indeed, Cubaexport is able to, and indeed does, sell rum in other countries under the "Havana Club" mark and is not precluded from enforcing its trademark rights in those countries. All the cases Bacardi cites for the proposition that related litigation, either foreign or domestic, justifies Bacardi's apprehension of litigation are in no way analogous to the unique situation here – namely that Section 211 prevents Bacardi from asserting its trademark rights.

Conveniently, in its Opposition, Bacardi sweeps aside the obvious implications of Section 211 and, instead, simply asserts that an objectively reasonable apprehension of suit does not hinge upon whether Cubaexport has a "probability of success in such a litigation." Opp. at 18. However, an objectively reasonable person would not have a reasonable apprehension of suit where the Second Circuit has already decided the issue, thereby causing a large sophisticated company to conclude that bringing such a lawsuit for infringement of an unenforceable mark would be a waste of time and money.[16]

---

[16] Bacardi fails to substantively address Cubaexport's arguments regarding whether the court has subject matter jurisdiction over Bacardi's federal and state unfair claims. In its motion, Cubaexport asserted that Bacardi cannot have a reasonable apprehension of suit because the Southern District found, and the Second Circuit affirmed, that HCH and HCI did not have any standing to bring a cause of action under section 43(a) of the Lanham Act because the trade embargo and Section 211 prevented HCH and HCI from being able to show any present or future competitive injury. Motion at 30-34. Bacardi simply addresses this assertion with the same argument that a "probability of success in such a litigation" does not undermine Bacardi's reasonable apprehension of suit. Opp. at 18. Cubaexport's

(Continued…)

Theoretically, Cubaexport could bring a lawsuit, but Bacardi "must show not only a 'reasonable apprehension' of suit but also a 'concrete claim' rather than one which is academic." *Joint Stock Soc'y v. UDV N. Am., Inc.*, 53 F. Supp. 2d 692, 702 (D. Del. 1999) (citing *Az. Inc. v. E.I. du Pont de Nemours & Co.*, 662 F. Supp. 603, 610 (D. Del. 1987)) (citations omitted), *aff'd*, 266 F.3d 164 (3d Cir. 2001).  Because Section 211 prevents Cubaexport from enforcing its trademark rights, the "commercial realities" of the situation do not put Bacardi in a "position where it must run a real risk of potential liability if it goes ahead to exercise what it believes are its legal rights in the market place." 5 J. Thomas McCarthy, *McCarthy on Trademarks & Unfair Competition* § 32:51 (4th ed. 2004) (citing *Muller v. Olin Mathieson Chem. Corp.*, 404 F.2d 501, 504-5 (2d Cir. 1968)).

Bacardi's feigned concern is contradicted by its own assertions that:

> Cubaexport can claim no direct competitive injury from the alleged geographic misdescription because it does not sell rum in the United States . . . Cubaexport can have no reasonable expectation that the embargo will be lifted in the foreseeable future, or that it will be lifted in such a way as to allow the Cuban government (or which Cubaexport is a part) to sell *Havana Club* rum in the United States while keeping for itself the confiscated HAVANA CLUB mark and a monopoly of rum production in Cuba.  And any commercial interest based on the potential lifting of the embargo would be ephemeral, because Cubaexport's purported rights to the U.S. HAVANA CLUB mark are unenforceable under Section 211 without the consent of BACO, as the *bona fide* successor of the legitimate owner of the mark . . .

Opp. at 38-39.

In effect, Bacardi has conceded that it cannot possibly have a reasonable expectation of suit because Cubaexport cannot "be harmed" by Bacardi's use of the "Havana Club" mark due to the trade embargo.  If Bacardi believes its own assertions, they

_____

(…Continued)
response is the same as its argument with respect to Bacardi's federal and state trademark claims.

cannot convincingly assert that they have an objectively reasonable apprehension of suit. To the contrary, Bacardi knows that Cubaexport's hands are tied in terms of protecting its legitimate U.S. trademark rights.  Bacardi has effectively conceded that no objectively reasonable person could have any apprehension of suit.

**B.      Bacardi Has Failed To Allege The Requisite Facts To Properly Plead An Intent And Ability To Resume Use Of The "Havana Club" Mark**

Bacardi's sole assertion that it has an imminent intent and ability to resume use of the "Havana Club" mark in the U.S. is that it distributed rum under the "Havana Club" mark eight years ago and intends to use the mark when its rights have been established.  Opp. at 40-41.  Bacardi fails to substantively address any of the authority Cubaexport cites for the proposition that a simple allegation of intent is not sufficient, as a matter of law, to create a case or controversy.  Motion at 28.  Instead, Bacardi stands by the insufficient allegations in its Complaint.

Bacardi has failed to allege facts that indicate that it has taken *any* steps to use the "Havana Club" mark in commerce since 1996.  For example, Bacardi has failed to either assert or offer evidence that it has a business plan, marketing campaign, advertising campaign, or even draft advertising concerning use of the "Havana Club" mark in the U.S. *See Starter Corp. v. Converse, Inc.*, 84 F.3d 592, 596-97 (2d Cir. 1996); s*ee also Joint Stock*, 53 F. Supp. 2d at 702.  As such, Bacardi cannot demonstrate that it has put "time, energy and money" into selling "Havana Club" rum.  *Starter Corp.*, 84 F.3d at 596-97 (investment of a significant amount of time and money is an indicator to intent and ability to commence use of a mark).  Moreover, Bacardi has not submitted any "label to the *court* which they claim will serve as the one they intend to use in the United States." *Joint Stock*, 53 F. Supp. 2d at 704.

Bacardi's assertion that it is awaiting the outcome of this case to resume distribution under the Havana Club mark is disingenuous.  Bacardi agreed to cease distributing "Havana Club" rum at the start of the Southern District litigation, and despite having prevailed in that action in 2000, Bacardi is still not selling rum under the "Havana Club" mark.  Motion at 29.  Although the court in *Starter* held that awaiting the outcome of a lawsuit is a defensible reason for not selling product under a potentially infringing mark, the plaintiffs in those instances had recently delivered product to warehouses, provided samples to consumers, and marketed and advertised the product at the time of the Complaint.  *See Sigma-Tau Industrie Farmaceutiche Riunite, S.P.A. v. Lonza, Ltd.*, 36 F. Supp. 2d 26, 32 (D.D.C. 1999); *Starter Corp.*, 84 F.3d at 596.  Bacardi has failed to allege any similar facts.

## IV.   COUNTS II-V OF THIS ACTION SHOULD BE DISMISSED FOR LACK OF PERSONAL JURISDICTION

### A.   The Determination of Commercial Activity Under the FSIA is Comparable to the Determination of Minimum Contacts Under the U.S. Constitution and the District of Columbia Long-Arm Statute

Bacardi concedes that the court does not have personal jurisdiction over Cubaexport with respect to Counts II-V pursuant to the due process clause of the U.S. Constitution and the D.C. long-arm statute.  Instead, Bacardi asserts that the Foreign Sovereign Immunities Act ("FSIA") gives the court personal jurisdiction over Cubaexport. Opp. at 11.  Bacardi further asserts that although foreign states are entitled to immunity, Cubaexport falls within the "commercial activity" exception to that immunity.[17]  Opp. at

---

[17] A foreign state is exempt from immunity in any court of the United States or of the states in any case in which the action is based upon (i) "a commercial activity carried on in the United States by the foreign state"; or (ii) "an act performed in the United States in connection with a commercial activity of the foreign state elsewhere"; or (iii) "an act

(Continued…)

13.  What Bacardi fails to disclose is that the relevant analysis under the FSIA with respect to the "commercial activity" exception is comparable to the minimum contacts analysis under the D.C. long-arm statute[18] and the Due Process Clause.

"Commercial activity" is defined as "a regular course of commercial conduct."  Commercial activity by a foreign state means commercial activity carried on by that state and "having substantial contact with the United States."  28 U.S.C. §§ 1603(d)-(e) (1994).  Bacardi alleges that Cubaexport's only conduct that satisfies the commercial activity exception is Cubaexport's conduct in obtaining, maintaining, and defending the "Havana Club" U.S. trademark registration.[19]  However, proceedings before the PTO do not constitute commercial activity.  *See Stabilisierungsfonds fur Wein v. Kaiser Stuhl Wine Distribs. Pty. Ltd*., 647 F.2d 200, 205 n.11 (D.C. Cir. 1981).  In addition, Bacardi asserts several points that make it impossible to conclude that Cubaexport engages in commercial activity in the United States: (1) Cubaexport has "no commercial interest" in the "Havana Club" mark because it does not and indeed, cannot under the trade embargo, sell rum in the U.S.; (2) Cubaexport cannot show commercial injury under the U.S. trademark laws; and

_____

(...Continued)
outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States."  28 U.S.C. § 1605(a)(2) (1994).

[18] Cubaexport does not "do business" in D.C., "engage in a persistent course of conduct," "derive substantial revenue from business" or have agents or employees within the jurisdiction.  Motion at 23.

[19] The cases that Bacardi cites for this proposition are distinguishable.  Neither *Gilson* nor *Leutwyler* deal with parties obtaining, maintaining or defending a patent, trademark or copyright with the PTO itself; they merely deal with actual disputes involving patents and copyrights, respectively.  Opp. at 13.

(3) Cubaexport is no longer in the rum business, either in or outside of the U.S.  Opp. at 38-39.

In any event, Cubaexport's "contacts" with the PTO cannot serve as the basis for personal jurisdiction as they are merely governmental contacts.  Indeed, both D.C. law and the FSIA state that when the "contacts" with the forum state are considered governmental, the court does not have personal jurisdiction.  *See Tex. Trading & Milling Corp. v. Fed. Republic of Nig.*, 647 F.2d 300, 307 (2d Cir. 1981); *Am. Standard Inc. v. Sanitary Wares Mfg. Corp.*, 3 USPQ2d 1637, 1639 (D.D.C. 1987).

**B.     Cubaexport Has Not Waived its Immunity Under 28 U.S.C. § 1605(a)(1)**

Bacardi alleges that Cubaexport has waived its immunity under the FSIA. However, the authority Bacardi cites for this proposition are not on point.  Opp. at 12-13. Cubaexport did not, as Bacardi alleges, waive its immunity under Section 1605(a)(1) by failing to assert immunity in its motion to dismiss, since a motion is not a responsive pleading.  *See Canadian Overseas Ores Ltd. v. Compania de Acero del Pacifico S.A.*, 727 F.2d 274, 277 (2d Cir. 1984).  In addition, Cubaexport did not waive its immunity by "appearing" before the TTAB.  The FSIA applies only to U.S. and state courts.  *See* 28 U.S.C. §§ 1330(a), 1602 (1993, 1994).  The TTAB, as part of the PTO, is an agency, not a U.S. or state court.  *See Dickinson v. Zurko*, 527 U.S. 150, 154 (1999) (the PTO is an agency).

Even if Cubaexport had waived its immunity as to Count I by appearing in the TTAB proceeding, that "waiver" should not be imputed to Counts II-V.  Cubaexport

did not bring this action and the claims at issue are not counterclaims.[20]  Indeed, the D.C.

Circuit refused to extend waiver to certain counts in an action even though there was an

express waiver as to other counts in the same action.  *See World Wide Minerals, Ltd. v.*

*Republic of Kaz.*, 296 F.3d 1154, 1162-63 (D.C. Cir. 2002).  Thus, under either the Due

Process Clause, the D.C. long-arm statute or the FSIA, Bacardi has failed to establish that

the court has personal jurisdiction over Cubaexport with respect to Counts II-V.

## V.    COUNT II DOES NOT STATE A VALID CLAIM FOR COMMON-LAW RIGHTS TO THE HAVANA CLUB MARK[21]

### A.    Bacardi's Use of the Havana Club Mark is Geographically Deceptively Misdescriptive

Bacardi claims that Cubaexport's factual assertions regarding the factors

that determine a geographically deceptively misdescriptive mark are unsupported.  Opp. at

40-41.  Bacardi is wrong.  Cubaexport's assertions are supported by the TTAB's findings

in connection with Bacardi's attempts to obtain registered trademarks for rum, including

HAVANA SELECT, HABANA CLASICO, OLD HAVANA, HAVANA PRIMO,

HAVANA CLIPPER, and HAVANA STYLE (the "Havana rum trademarks").  *In re*

*Bacardi & Co.*, 48 USPQ2d 1031 (TTAB 1997).  The TTAB refused Bacardi's

applications for each of those Havana rum trademarks based on the finding that the marks

---

[20] Bacardi cites two non-binding decisions to support its allegation.  Opp. at 12 n.9.  Both decisions deal with actions that: (1) were brought by the foreign state in the U.S. and (2) involve waiver of immunity based on counterclaims as governed by 28 U.S.C. §§ 1330(c), 1607.

[21] Bacardi does not dispute that "Bacardi's [claim of ownership of the 'Havana Club' mark] . . . based on Bacardi's token sales of 'Havana Club' rum in 1995 and 1996 . . . is unsupportable as a matter of law, because Bacardi cannot establish common law rights *after* defendants already had a registered mark.  15 U.S.C. § 1057(c)."  Motion at 37.

were geographically, deceptively misdescriptive pursuant to Section 1052(e) of the

Lanham Act.  *See id.* at 1035.

The findings of fact made by the TTAB[22] in its decision must be accepted

as controlling, unless "they are 'unsupported by substantial evidence.'"[23]  *See Pro-*

*Football, Inc. v. Harjo*, 284 F. Supp. 2d 96, 114 (D.D.C. 2003) (quoting 5 U.S.C. § 706);

*Pro-Football, Inc. v. Harjo*, 57 USPQ2d 1140, 1142, 1144 (D.D.C. 2000) (on a motion to

dismiss, the Court stated that where "a party challenges a TTAB decision in federal district

court, the court's standard of review is a hybrid of deferential treatment and *de novo*

scrutiny" and will "defer to TTAB findings if they are factual, relevant, and properly

before the Court"); *see also* 4A Rudolf Callmann, *Callmann on Unfair Competition,*

*Trademarks and Monopolies*, § 26:57 (4th ed. 2004) ("the TTAB decision must be upheld

if it is supported by substantial evidence").  Based on the standard for determining a

motion to dismiss, Bacardi cannot obtain relief under any set of facts that could be proved

consistent with the allegations in the Complaint.  *See H.J. Inc. v. N.W. Bell Tel. Co.*, 492

U.S. 229, 249-50 (1989) (citation omitted).

Finally, Bacardi asserts that because the Southern District decided that rum

consumers in the U.S. would not be confused as to the geographic source of Bacardi's rum,

---

[22] Given the TTAB's findings that any "additional term added to proposed mark . . . does
not detract from primary geographic significance in each of proposed, composite marks," it
is more than likely that the TTAB would find the "Havana Club" mark geographically,
deceptively misdescriptive as well.  *In re Bacardi*, 48 USPQ2d at 1034.

[23] The TTAB made the decision based on evidence from dictionaries, encyclopedias, and
gazetteers indicating that Havana, Cuba is a major city which lists rum as a significant
product.  *In re Bacardi*, 48 USPQ2d at 1035.  In addition, Bacardi alleged that its family
name "Bacardi" is associated with rum that is historically from Cuba and that U.S.
consumers associate a certain popular style of rum as originating in Cuba.  *See id.*

the court must make the same finding in this instance.  Opp. at 41.  However, the Southern

District found only that a small number of consumers authorized to visit Cuba would not

be confused by the sale of Bacardi's Havana Club rum in the U.S.  *Havana Club III*, 62 F.

Supp. 2d at 1100.[24]  These consumers hardly constitute the general "public."  Rather, the

well-established authority is that where the public "mistakenly believe[d] they were

purchasing 'traditional [Cuban] products'," the alleged misdescription would materially

affect the consumer's decision to purchase the goods.  *See In re Cal. Innovations, Inc.*, 329

F.3d 1334, 1341 (Fed. Cir. 2003) (quoting *In re Save Venice*, 259 F.3d 1346, 1350-54

(Fed. Cir. 2001)); *In re Boyd Gaming*, 57 USPQ2d 1944 (TTAB 2000) ("Royal Havana

Resort & Casino" mark found unregisterable for resort and casino not yet in existence

because consumers would make an incorrect goods/place association).  Such is the case

here.

### B.     Bacardi's Assertion that Cubaexport Does Not Have Standing Is Inapplicable

Bacardi goes to great lengths to try to demonstrate that "Cubaexport lacks

standing to bring the same claims [sic] before this Court" that HCH and HCI brought in

*Havana Club III,* 62 F. Supp. 2d 1085 (S.D.N.Y 1999); *see also* Opp. at 37-40.  Bacardi's

entire discussion of that issue is irrelevant because Cubaexport is not bringing a Section

---

[24] Bacardi also asserts that because the BATF approved Bacardi's labeling of "Havana
Club" rum, the mark is not geographically misdescriptive and this court must give judicial
deference to the BATF.  Opp. at 41 n.21.  Bacardi cites no authority for this proposition.
Moreover, the fact that the BATF approved Bacardi's "Havana Club" label is irrelevant to
the determination of Bacardi's compliance with the Lanham Act.  *See Institut National des
Appellations d'Origine v. Vintners Int'l Co., Inc.*, 958 F.2d 1574, 1577, 1583 ("It is not
[the court's] concern or that of the PTO what Vintners must do to comply with the BATF
*labeling* requirement").

43(a) claim against Bacardi in this proceeding.  Rather, Cubaexport is moving to dismiss Count II for failure to state a claim.  Motion at 36-40.  The Southern District's ruling on HCH's and HCI's lack of standing is irrelevant to Cubaexport's right to challenge the sufficiency of Bacardi's Complaint, except insofar as it confirms that Bacardi has no reasonable apprehension of suit.

### C.       The Doctrine of Unclean Hands Is Inapplicable

Bacardi's resort to the unclean hands doctrine is similarly flawed.  Opp. at 43-44.  Bacardi's supporting authorities simply state that unclean hands may be a defense to a claim for relief.  *Id.; see also* 5 *McCarthy on Trademarks & Unfair Competition*, § 31:44 ("Unclean hands . . . is purely an affirmative defense. . . .").  None of these authorities suggest that Cubaexport may not bring a Rule 12(b)(6) motion challenging the sufficiency of Count II or that Count II states a valid claim for relief because Cubaexport supposedly has unclean hands.[25]

### D.       Bacardi's Reliance on Section 1052(a) is Misplaced

Bacardi's only response to Cubaexport's assertion that Bacardi is precluded from establishing secondary meaning in its use of the "Havana Club" mark is that Bacardi is grandfathered under Section 1052(a).  Opp. at 42-43.  However, Bacardi's reliance on 15 U.S.C. § 1052(a) is misplaced.  Bacardi is correct in asserting that because Bacardi first

---

[25] Moreover, in urging that Count II states a valid claim for relief because Cubaexport supposedly has unclean hands, Bacardi relies on facts that it has not pleaded, *see generally* Opp. at 43, contrary to its contention that a "Rule 12(b)(6) motion simply tests the sufficiency of the Complaint."  Opp. at 20.

used the "Havana Club" mark in 1995, Section 1052(a) does not apply to Bacardi.[26]
However, Bacardi fails to disclose that Section 1052(a) is not the only reason to refuse
registration.

Cubaexport's assertion that Section 1052(e) applies to Bacardi is indeed
correct.  Motion at 40.  As a matter of law, Bacardi's use of the "Havana Club" mark is
geographically deceptively misdescriptive, and, as such, must be refused registration.  *See
In re Bacardi & Co.*, 48 USPQ2d at 1035; 15 U.S.C. § 1052(e).  Moreover, Bacardi is no
longer entitled to show that the "Havana Club" mark acquired distinctiveness because
Bacardi's use of the mark occurred after December 8, 1993, the date of the enactment of
NAFTA. 15 U.S.C. § 1052(f) (Supp. 2004); 2 and 6 *McCarthy on Trademarks & Unfair
Competition*, § 14:31 and App. A1-13.[27]

## VI.  CONCLUSION

For the foregoing reasons, Cubaexport respectfully requests that this Court
grant its motion to dismiss Bacardi's Complaint.

[SIGNATURE OF COUNSEL ON FOLLOWING PAGE]

---

[26] Section 1052(a) of the Lanham Act is an absolute bar to registration for marks first used
on or in connection with spirits after January 1, 1996.  15 U.S.C. § 1052(a).

[27] Bacardi's reliance on JASA's use of "Havana Club" prior to 1959 to show that Bacardi
has built up secondary meaning in the "Havana Club" mark, Opp. at 42, is also wrong as a
matter of law.  Bacardi itself recognizes that secondary meaning exists when "as a result of
its use by a specific person, [the term becomes] uniquely associated with that person's
goods," Opp. at 42 n.22.  JASA's failure to use the "Havana Club" mark since 1959 does
not show that Bacardi has built up secondary meaning in the "Havana Club" mark.

Dated:  October 5, 2004

/s/  Richard L. Rainey

Richard L. Rainey
District of Columbia Bar No. 452996
Renée L. Stasio
District of Columbia Bar No. 484626
FISH & NEAVE LLP
1899 Pennsylvania Avenue, N.W.
Washington, DC  20006
Telephone: (202) 303-2450
Facsimile: (202) 303-2490

Of Counsel:

*Attorney for Cubaexport*

Herbert F. Schwartz
Vincent N. Palladino
FISH & NEAVE LLP
1251 Avenue of the Americas
New York, NY  10020
Telephone: (212) 596-9000
Facsimile:  (212) 596-9090