# Exhibit 30

AGREEMENT

ON THE

PURCHASE AND SALE OF INTELLECTUAL PROPERTY

AND RIGHTS AND CLAIMS CONCERNING THERETO

By And Between

JOSE ARECHABALA S.A. (IN LIQUIDATION),

CERTAIN HOLDERS OF DIRECT OR INDIRECT BENEFICIAL

INTERESTS IN THE SAME,

And

JOSE ARECHABALA INTERNATIONAL LTD.

BAC 00972
CONFIDENTIAL - ATTORNEYS'
EYES ONLY

April 18, 1997

## TABLE OF CONTENTS

Page

ARTICLE 1    DEFINITIONS . . . . . . . . . . . . . . . . . . . . . . .   3
    1.1      Defined Terms . . . . . . . . . . . . . . . . . . . . . .   3
    1.2      Other Rules of Construction . . . . . . . . . . . . . . .   6
    1.3      Headings . . . . . . . . . . . . . . . . . . . . . . . .   7

ARTICLE 2    PURCHASE AND SALE . . . . . . . . . . . . . . . . .   7
    2.1      Purchase and Sale . . . . . . . . . . . . . . . . . . .   7
    2.2      Purchase Price . . . . . . . . . . . . . . . . . . . . .   9
    2.3      Closing . . . . . . . . . . . . . . . . . . . . . . . . .  10
    2.4      Deliveries at Closing . . . . . . . . . . . . . . . . . .  10
    2.5      Accession and Purchase and Sale of Additional Title .  11
    2.6      Compliance with the Cuban Assets Control Regulations  11
    2.7      Reserved Rights . . . . . . . . . . . . . . . . . . . . .  12

ARTICLE 3    REPRESENTATIONS AND WARRANTIES OF
             THE SELLERS . . . . . . . . . . . . . . . . . . . . . .  12
    3.1      Representations and Warranties of JASA . . . . . . . .  12
    3.2      Representations and Warranties of the
             Participating Interest Holders . . . . . . . . . . . . .  14
    3.3      Representations and Warranties of the Sellers . . . . .  14

ARTICLE 4    REPRESENTATIONS AND WARRANTIES OF
             THE PURCHASER . . . . . . . . . . . . . . . . . . . .  14
    4.1      Corporate Organization and Good Standing . . . . . . .  15
    4.2      Authorization. . . . . . . . . . . . . . . . . . . . . . .  15
    4.3      Enforceability. . . . . . . . . . . . . . . . . . . . . . .  15

ARTICLE 5    COVENANTS OF THE PARTIES . . . . . . . . . . . .  16
    5.1      Cooperation; Further Assurances . . . . . . . . . . . .  16
    5.2      Confidentiality. . . . . . . . . . . . . . . . . . . . . .  17
    5.3      Use of Trademarks . . . . . . . . . . . . . . . . . . . . .  17
    5.4      Benefit and Assignability of Covenants . . . . . . . . .  18
    5.5      Use of Retained Commission and Payment of Expenses  19

ARTICLE 6    INDEMNIFICATION . . . . . . . . . . . . . . . . . .  19
    6.1      Effectiveness of Representations, Warranties and
             Covenants . . . . . . . . . . . . . . . . . . . . . . . .  19
    6.2      Indemnification . . . . . . . . . . . . . . . . . . . . .  20
    6.3      Exclusive Remedy . . . . . . . . . . . . . . . . . . . .  20
    6.4      Limitation on Indemnification . . . . . . . . . . . . . .  20

April 13, 1997

BAC 00973

CONFIDENTIAL - ATTORNEYS'
EYES ONLY

- ii -

| ARTICLE 7 | MISCELLANEOUS PROVISIONS . . . . . . . . . . . | 21 |
| 7.1 | Execution in Counterparts; Effectiveness . . . . . . . . | 21 |
| 7.2 | Notices . . . . . . . . . . . . . . . . . . . . . . . . . . | 21 |
| 7.3 | Waivers . . . . . . . . . . . . . . . . . . . . . . . . . . | 23 |
| 7.4 | Amendment . . . . . . . . . . . . . . . . . . . . . . . | 23 |
| 7.5 | Entire Agreement . . . . . . . . . . . . . . . . . . . . | 24 |
| 7.6 | Applicable Law. . . . . . . . . . . . . . . . . . . . . | 24 |
| 7.7 | Assignments . . . . . . . . . . . . . . . . . . . . . . | 24 |
| 7.8 | Binding Effect; Benefits . . . . . . . . . . . . . . . . | 24 |
| 7.9 | Schedules, Annexes and Other Agreements . . . . . . | 24 |

SCHEDULE 0.1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27
SCHEDULE 2.1(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29
SCHEDULE 2.1(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30
SCHEDULE 2.1(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31
SCHEDULE 2.1(d) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32
SCHEDULE 2.2(d) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

ANNEX 2.4 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35
ANNEX 2.5 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

H:\GENERAL\IRVIN\JASA.3

April 18, 1997

BAC 00974

CONFIDENTIAL - ATTORNEYS'
EYES ONLY

AGREEMENT

## ON THE PURCHASE AND SALE OF INTELLECTUAL PROPERTY AND RIGHTS AND CLAIMS CONCERNING THERETO

THIS AGREEMENT ON THE PURCHASE AND SALE OF INTELLECTUAL PROPERTY AND RIGHTS AND CLAIMS CONCERNING THERETO, dated as of this 17th day of April, 1997, made by and between

> JOSE ARECHABALA S.A. (in liquidation), a corporation organized and existing under the laws of Cuba and currently in liquidation (hereinafter referred to as the "JASA"),

> EACH OF THE PERSONS LISTED ON SCHEDULE O.1, in his individual capacity and in respect of his own right and interest (each such Person hereinafter referred to as the "Participating Interest Holder"), and

> JOSE ARECHABALA INTERNATIONAL LTD., a corporation organized and existing under the laws of Liechtenstein (hereinafter referred to as the "Purchaser"),

## W I T N E S S E T H :

WHEREAS JASA was, immediately prior to the enactment of Cuban Law No. 890 of October 13, 1960, the rightful owner of all right, title and interest in and to (i) all inventions, formulae, manufacturing secrets, processes, and know-how concerning the manufacture of certain alcoholic beverages sold under the brand names *"Havana Club"* or *"Arechabala"* and (ii) all intellectual property, trademarks, trade names, labels, symbols, logos, and other devices used in connection with the manufacture, distribution or sale of such products in Cuba and elsewhere and of the goodwill represented thereby;

WHEREAS, pursuant to the aforesaid Cuban Law No. 890 and certain other actions, the Cuban Government has purported to confiscate and expropriate the assets and liabilities of JASA and to assert rights to such assets in certain countries around the world;

H·GENERAL·IRVIN·JASA.3                                                   April 18, 1997

BAC 00975

CONFIDENTIAL - ATTORNEYS'
EYES ONLY

- 2 -

WHEREAS, following said confiscation and after a period of inactivity resulting from the exile of its stockholders, JASA has been dissolved by appropriate corporate action of its stockholders and is now in a state of liquidation;

WHEREAS each Participating Interest Holder is the holder of a direct or indirect beneficial interest in JASA and a substantial number of Participating Interest Holders are stockholders of the Purchaser;

WHEREAS JASA desires to sell to the Purchaser, and the Purchaser desires to purchase from JASA, all of JASA's right, title, and interest in and to certain assets, rights, and claims related to the trademarks or trade names *"Havana Club"* and *"Arechabala"*, as more fully described below, all under the terms and subject to the conditions set forth herein;

WHEREAS each Participating Interest Holder desires to sell to the Purchaser any and all right, title, and interest that such Participating Interest Holder may have in and to such assets, rights, and claims, and the Purchaser desires to purchase any such right, title, and interest, upon the terms and subject to the conditions set forth herein;

WHEREAS each Participating Interest Holder and JASA (hereinafter collectively referred to as the "Sellers") and the Purchaser anticipate that, immediately after the consummation of the transactions contemplated in this Agreement, the Purchaser will enter into one or more agreements with Bacardi & Company Limited ("BACO"), a corporation organized and existing under the laws of Liechtenstein, pursuant to which the Purchaser will sell to BACO substantially all of the Purchaser's right, title, and interest in and to the aforementioned assets, rights, and claims related to the trademark and trade name *"Havana Club"*, and will grant a license to BACO to use the trademark and trade name *"Arechabala"* for certain purposes, all as may be specified in such agreements between the Purchaser and BACO, and the Sellers and the Purchaser acknowledge that in entering into such agreements BACO will rely on the valid and effective consummation of the transactions contemplated by this Agreement; and

NOW, THEREFORE, in consideration of the premises and the mutual covenants and agreements contained herein, and intending to be legally bound, each of the Sellers and the Purchaser hereby agree as follows:

H GENERAL IRVIN JASA 3                                             April 18, 1997

BAC 00976
CONFIDENTIAL - ATTORNEYS'
EYES ONLY

- 3 -

# ARTICLE 1

# DEFINITIONS

1.1     Defined Terms.  Whenever used in this Agreement, the following terms shall have the meanings respectively ascribed thereto:

(a)     "Affiliate" means, in respect of any Person, any other Person that directly, or indirectly through one or more intermediaries, controls, is controlled by, or is under common control with such first Person.

(b)     "BACO" has the meaning ascribed thereto in the recitals hereof.

(c)     "Bill of Sale"  has the meaning ascribed thereto in Section 2.4(a).

(d)     "Blocked Person" means, at any given time, a Person who is a "designated national" other than an "unblocked national" under the Cuban Assets Control Regulations.

(e)     "Books and Records" has the meaning ascribed thereto in Section 2.1(e).

(f)     "Claim" means a written notice asserting a breach of a representation, warranty or covenant specified in this Agreement, which notice shall reasonably set forth, in light of the information then known to the party giving such notice, a description of and an estimate (if then reasonable to make) of the amount involved in such breach.

(g)     "Claim Rights" has the meaning ascribed thereto in Section 2.1(f).

(h)     "Closing" has the meaning ascribed thereto in Section 2.3.

(i)     "Confidential Information" means any confidential or secret information or data, whether or not reduced to writing, pertaining to the Purchased



H:\GENERAL\IRVIN\JASA 3                                                    April 18, 1997

BAC 00977
CONFIDENTIAL - ATTORNEYS'
EYES ONLY

- 4 -

Assets, including scientific or technical knowledge, expertise, skill, practice, proprietary rights, patented or unpatented inventions, formulas, trade secrets, manufacturing techniques and procedures, analytical methodology, processes, and data.

(j)     "Control" means, in respect of any Person, the power to control the direction, management and policies of that Person, or to elect a majority of its directors, managing directors, trustees or other governing authorities of that Person. The verbal forms "controls" and "controlled" shall be interpreted accordingly.

(k)     "Cuban Assets Control Regulations" means the Cuban Assets Control Regulations of the United States, which are currently codified at 31 Code of Federal Regulations Part 515.

(l)     "Damages" means all claims, demands, actions, causes of action, assessments, losses, investigations, proceedings, damages, penalties, fines, costs, expenses and judgments, including, without limitation, interest and penalties and reasonable attorneys' fees, disbursements and expenses.

(m)     "Designs" has the meaning ascribed thereto in Section 2.1(d).

(n)     "Governmental Authority" means any governmental body, agency or official of any country or political subdivision of any country.

(o)     "Gross Payment" has the meaning ascribed thereto in Section 2.2(b).

(p)     "Hypothetical Full-Participation Net Payment" has the meaning ascribed thereto in Section 2.2(d)(i).

(q)     "Intellectual Property" means all intellectual and industrial property, including (i) inventions and patents for inventions, including re-issue thereof and continuation and continuations in part, (ii) computer programs, (iii) copyrights, (iv) designs and industrial designs, (v) trademarks, and any word, symbol, icon, logo

April 18, 1997

BAC 00978
CONFIDENTIAL - ATTORNEYS'
EYES ONLY

- 5 -

or other indicia of origin adopted or used in connection with any product or service, and (vi) trade secrets and Confidential Information.

(r)     **"Intellectual Property Rights"** means all intellectual and industrial property and other proprietary rights in respect of Intellectual Property, and includes all rights to Intellectual Property.

(s)     **"JASA"** has the meaning ascribed thereto in the preamble hereof.

(t)     **"Know-How"** has the meaning ascribed thereto in Section 2.1(a).

(u)     **"Lien"** means, in respect of any asset, any mortgage, lien, pledge, charge, security interest, restriction or encumbrance of any kind, whether statutory or otherwise, in respect of such asset.

(v)     **"Net Payment"** has the meaning ascribed thereto in Section 2.2(b).

(w)     **"Participating Interest Holder"** means, as of the date hereof, the Persons listed on Schedule 0.1, and, as of any later date, the Persons listed on Schedule 0.1 and any Non-Participating Interest Holders who may have become Participating Interest Holders, pursuant to Section 2.5, as of such date.

(x)     **"Person"** means a human being, labor organization, partnership, limited liability company, limited liability partnership, association, undivided estate, joint venture, corporation, legal representative, trustee, trustee in bankruptcy, receiver, Governmental Authority, or any other legal entity whatsoever.

(y)     **"Products"** means the alcoholic beverages that were manufactured or sold at any time prior to the date hereof under the trademark or brand name *"Havana Club"* or *"Arechabala"* by or on behalf of the Seller.

(z)     **"Purchased Assets"** has the meaning ascribed thereto in Section 2.1.

H·GENERAL·IRVIN·JASA.3                                          April 18, 1997

BAC 00979
CONFIDENTIAL - ATTORNEYS'
EYES ONLY

- 6 -

(aa)     "Purchaser" has the meaning ascribed thereto in the preamble hereof.

(ab)     "Purchaser Group" means the Purchaser and its Affiliates, and the officers, directors, stockholders, investors, agents, and attorneys of each of the foregoing.

(ac)     "Registrations" has the meaning ascribed thereto in Section 2.1(c).

(ad)     "Retained Commission" has the meaning ascribed thereto in Section 2.2(b).

(ae)     "Sellers" means, collectively, JASA and the Participating Interest Holders.

(af)     "Seller Group" means in respect of each Seller, such Seller and its Affiliates, and the officers, directors, stockholders, investors, agents, and attorneys of each of the foregoing.

(ag)     "Trademarks" has the meaning ascribed thereto in Section 2.1(b).

1.2     Other Rules of Construction.  The definitions in Section 1.1 shall apply equally to both the singular and plural forms of the terms defined.  Whenever the context may require, any pronoun shall include the corresponding masculine, feminine and neuter forms.  The words "include," "includes," and "including" shall be deemed to be followed by the phrase "without limitation."  Unless the context shall otherwise require, all references to "party" and "parties" shall be deemed references to the parties to this Agreement and to a party's successor in title.  All references to Sections and Paragraphs shall be deemed references to Sections and Paragraphs of this Agreement, unless the context shall otherwise require.  All references herein to Schedules and Annexes shall be deemed to be references to the Schedule(s) and Annex(es) attached to this Agreement.  The terms "this Agreement," "hereof," "hereunder," and similar expressions refer to this Agreement as a whole and not to any particular Article or Section or other portion of this Agreement and include any agreement supplemental hereto.  The conjunction "or" shall be

H:\GENERAL\IRVIN\JASA.3                                              April 18, 1997

BAC 00980
CONFIDENTIAL - ATTORNEYS'
EYES ONLY

- 7 -

understood in its inclusive sense (and/or). The expression "any and all" shall be understood to mean "all of those that exist, if any exists."

1.3     Headings. The division of this Agreement into Articles and Sections and the insertion of headings are for convenience of reference only and shall not affect the construction or interpretation of this Agreement.

## ARTICLE 2

## PURCHASE AND SALE

2.1     Purchase and Sale. Upon the terms and subject to the conditions set forth in this Agreement, at the Closing each Seller shall sell, transfer, assign, convey and deliver to the Purchaser, and the Purchaser shall purchase and acquire from each Seller, all right, title and interest of such Seller in and to the following (the "Purchased Assets"):

(a)     The confidential and proprietary information, including any formula, pattern, compilation, method, invention, technique or process, that was used at any time by such Seller in the manufacture or sale of any Products (hereinafter referred to as the "Know-How"), including the Know-How described in Schedule 2.1(a), but only to the extent that the Know-How exists on the date hereof and is in the possession or control of such Seller;

(b)     Any and all trade names, symbols, devices, logos or other words or designations used at any time and anywhere by such Seller to identify and distinguish the Products, and any combination of such names, symbols, devices, logos or other words or designations (hereinafter referred to as the "Trademarks"), including the Trademarks described on Schedule 2.1(b), together with the goodwill appurtenant to the Trademarks;

(c)     Any and all registrations and applications for registration that may exist anywhere in the name of such Seller in respect of any Trademarks (hereinafter referred to as the "Registrations"), including the Registrations set forth on Schedule 2.1(c), and all rights pertaining to any Registrations;

H·GENERAL·IRVIN·JASA 3                                        April 18, 1997

BAC 00981
CONFIDENTIAL - ATTORNEYS'
EYES ONLY

- 8 -

(d)    Any and all designs and copyrights for labels, caps, bottles, packages, and other commercial designs used at any time anywhere by such Seller for or in connection with the Trademarks or the Products (hereinafter referred to as the "Designs"), including the Designs set forth on Schedule 2.1(d);

(e)    Any and all books and records, including all analyses, studies, reports, compilations, notes or other materials, that relate to or embody the Know-How, Trademarks, Registrations or Designs (hereinafter referred to as the "Books and Records"), but only to the extent that the Books and Records exist as of the date hereof and are in the possession or control of such Seller; and

(f)    Any and all rights, rights of action, causes of action, choses in action, demands, and claims for restitution of a particular or substitute property, compensation, damages or any other form of remedy (including any pre-judgment or post-judgment interest) that such Seller (by its own right or as successor in interest) may have at present or may in the future become entitled to, against any Person whatsoever, relating, directly or indirectly, to the Know-How, the Trademarks, the Registrations, the Designs or the Books and Records (such rights, rights of action, causes of action, choses in action, demands and claims hereinafter referred to as the "Claim Rights"), including any such Claim Rights in whole or in part arising directly or indirectly out of, or based on,

(i)    the expropriation, confiscation, nationalization, forfeiture or any other form of taking or seizure, by any Person under claim of governmental authority, in Cuba or elsewhere in the world, of any property, right, asset, privilege or claim included in or related to or arising in connection with the Know-How, the Trademarks, the Registrations, the Designs or the Books and Records (as the Know-How, the Trademarks, the Registrations, the Designs or the Books and Records may have existed prior to such expropriation, confiscation, nationalization, forfeiture, taking or seizure, or at any time thereafter); or

(ii)    the use, enjoyment or disposition (of any kind whatsoever) of, or trafficking in, any such property, right, asset, privilege or claim by any Person; or

H:\GENERAL\IRVIN\JASA 3                                April 18, 1997

BAC 00982
CONFIDENTIAL - ATTORNEYS'
EYES ONLY

- 9 -

(iii) the infringement, violation or impairment by any Person of any such property, right, asset, privilege or claim.

### 2.2    Purchase Price.

(a)    The parties anticipate that, shortly after the Closing, the Purchaser will sell, assign, transfer, convey, and deliver a certain portion of the Purchased Assets to BACO and will license certain other portion of the Purchased Assets to BACO, and that, in consideration thereof, BACO will make certain payments to the Purchaser, which may include payments to be made from time to time or periodically, over a period of years.

(b)    In consideration of the acquisition of the Purchased Assets and upon the terms and subject to the conditions set forth in this Agreement, the Purchaser shall pay to the Sellers, as set forth in Section 2.2(c) and (d), an amount equal to (i) each amount that may hereafter be received by the Purchaser from BACO as consideration for the sale or license by the Purchaser to BACO of all or a portion of the Purchased Assets (each such amount hereinafter referred to as a "Gross Payment"), minus (ii) a retained commission equal to ten per centum (10%) of such Gross Payment (the "Retained Commission"). The difference between each Gross Payment and the respective Retained Commission shall be referred to as the "Net Payment." The aggregate of all Net Payments shall constitute the total purchase price to be paid by the Purchaser for the acquisition of the Purchased Assets.

(c)    Each Net Payment shall be paid by the Purchaser to the Sellers, as set forth in Section 2.2(d), within thirty (30) days following receipt by the Purchaser of the respective Gross Payment.

(d)    It is the parties' intent that each Net Payment be allocated among the Sellers in such a way that JASA receive one-half of the payment (net of the Retained Commission) that the Purchaser expects that it would have received from BACO had all Non-Participating Interest Holders been Participating Interest Holders as of the date hereof. Accordingly, each Net Payment shall be allocated as follows:

April 18, 1997

BAC 00983
CONFIDENTIAL - ATTORNEYS'
EYES ONLY

- 10 -

    (i)  First, the Purchaser shall calculate the amount of the hypothetical net payment that it is assumed would have been made by the Purchaser had all Non-Participating Interest Holders been Participating Interest Holders (the "Hypothetical Full-Participation Net Payment" or "HFPNP"). The Hypothetical Full-Participation Net Payment shall be calculated by means of the following formula, in which "NP" means the actual Net Payment and "NPIH %" means the aggregate percentage interest (as set forth in Schedule 2.2(d)(i)) of all those who are Non-Participating Interest Holders at the time that the Net Payment is due:

$$HFPNP = \frac{2 \times NP}{(2 - NPIH \%)}$$

    (ii)  Second, the Purchaser shall pay to JASA such portion of the Net Payment as shall be equal to one-half (50%) of the Hypothetical Full-Participation Net Payment.

    (iii)  Third, the Purchaser shall pay the remainder of the Net Payment to the Participating Interest Holders, in proportion to their respective interests as set forth in Schedule 2.2(d)(i). For the avoidance of doubt, for the purpose of distributing such remainder to the Participating Interest Holders, the percentage interest of each such Participating Interest Holder shall be recalculated taking the aggregate interests of all Participating Interest Holders as one hundred per centum (100%).

    **2.3**    <u>Closing.</u> The consummation of the transactions contemplated by Sections 2.1 and 2.2 of this Agreement shall take place simultaneously in a single act (hereinafter referred to as the "Closing"), which shall take place immediately following the execution and delivery of this Agreement.

    **2.4**    <u>Deliveries at Closing.</u> Subject to the terms and conditions of this Agreement, at the Closing the Sellers shall deliver, or cause to be delivered, to the Purchaser (i) a bill of sale in the form attached hereto as Annex 2.4 (the "Bill of Sale") and (ii) the originals of all Books and Records.

H \GENERAL\IRVIN\JASA.3

April 18, 1997

BAC  00984
CONFIDENTIAL - ATTORNEYS'
EYES ONLY

- 11 -

## 2.5   Accession and Purchase and Sale of Additional Title.

(a)   The parties agree that any Non-Participating Interest Holder may become a party to this Agreement by delivering to the Purchaser a duly executed copy of a Notice of Accession and Bill of Sale, in the form of Annex 2.5(a).  Upon receipt of such Notice of Accession and Bill of Sale by the Purchaser,

(i)   The Non-Participating Interest Holder shall thenceforth be deemed to be (A) a party to this Agreement and (B) a Participating Interest Holder for the purposes of this Agreement; and

(ii)   The Purchaser shall give notice thereof to JASA, the Participating Interest Holders, and BACO.

(b)   Any Non-Participating Interest Holder who becomes a party to this Agreement pursuant to Section 2.5(a) shall be subject to all of the terms and conditions of this Agreement, including the representations, warranties, and covenants of the Participating Interest Holders, and shall be entitled to all rights and benefits pertaining to the Participating Interest Holders after the date of accession.

(c)   Following the accession of a Non-Participating Interest Holder pursuant to Section 2.5(a), the Purchaser shall exert reasonable efforts to sell or license to BACO all or a portion of the additional right, title, and interest in and to the Purchased Assets acquired by the Purchaser as a result of such accession, and shall pay to the Non-Participating Interest Holder any and all amounts received by the Purchaser from BACO from the sale of such additional right, title, and interest, minus the respective Retained Commission.

## 2.6   Compliance with the Cuban Assets Control Regulations.
Notwithstanding any other provision of this Agreement, any payment to be made under this Agreement to a Blocked Person shall be deposited instead in a blocked account in a United States financial institution, as provided in the Cuban Assets Control Regulations, and the parties shall comply in all other respects with the Cuban Assets Control Regulations and any license, order, ruling, or instruction issued thereunder.

BAC 00985
CONFIDENTIAL - ATTORNEYS'
EYES ONLY

- 12 -

2.7     Reserved Rights.  Notwithstanding any other provision of this Agreement, JASA reserves the right to use the name "Arechabala" as a part of its corporate name.

# ARTICLE 3

## REPRESENTATIONS AND WARRANTIES OF THE SELLERS

3.1     Representations and Warranties of JASA.  To induce the Purchaser to acquire the Purchased Assets, the Seller hereby makes the following representations and warranties, as of the date hereof, as follows:

(a)     Organization.  As of December 31, 1959, JASA was a *sociedad anónima* duly organized and validly existing under the laws of Cuba, having its corporate domicile in Cárdenas, Cuba.  Following the confiscation of the Seller's assets and liabilities by Cuba's revolutionary government and a period of inactivity, the Seller has been dissolved by resolution of a special meeting of shareholders and is now in a state of liquidation.  JASA currently has its provisional corporate domicile in Liechtenstein while maintaining *pro forma* corporate domicile in Cárdenas, Cuba.

(b)     Authorization.  JASA has all requisite power, authority and capacity (a) to enter into this Agreement, (b) to take, perform and execute all proceedings, acts and instruments required by it to consummate the sale of the Purchased Assets to the Purchaser in accordance with the terms hereof, and (c) to fulfill its obligations hereunder.  The execution and delivery by JASA of this Agreement and any other documents and instruments to be executed and delivered pursuant hereto, and the consummation by JASA of the transactions contemplated hereby, have been duly and validly authorized by all necessary organizational action of JASA.  No other organizational proceeding in respect of JASA is necessary under any provision of law to authorize the execution and delivery by JASA of this Agreement and any other documents and instruments to be executed and delivered by JASA pursuant hereto or to consummate the transactions contemplated hereby.  This Agreement has been duly and validly executed and delivered by JASA.



April 18, 1997

BAC 00986
CONFIDENTIAL - ATTORNEYS'
EYES ONLY

- 13 -

(c) <u>Enforceability</u>. This Agreement and the documents and instruments to be executed and delivered by JASA pursuant hereto constitute or, when executed and delivered pursuant hereto, will constitute legal, valid and binding agreements of JASA, enforceable against JASA in accordance with their respective terms, except to the extent that (a) such enforcement may be subject to any proceedings, subsequent to the date hereof, under any bankruptcy, insolvency, reorganization, moratorium or other laws, now or hereafter in effect, relating to or limiting creditors' rights generally and (b) the remedy of specific performance and injunctive and other forms of equitable relief may be subject to equitable defenses or to the discretion of the court before which any proceeding therefor may be brought.

(d) <u>Title to Assets</u>. Immediately prior to the enactment and entry into force of Cuban Law No. 890 of October 13, 1960, JASA was the sole and rightful owner of all right, title and interest in and to the Know-How, the Trademarks, the Registrations, the Designs, and the Books and Records, as each of them existed at the time, free and clear of all Liens. JASA subsequently became the sole and rightful owner of all right, title and interest in and to the Claim Rights, free and clear of all Liens. Except for any right, title or interest that the Cuban State may have acquired in respect of any portion of the Know-How, the Trademarks, the Registrations, the Designs, or the Books and Records as a result of the enactment and entry into force of Cuban Law No. 890, and except for any right, title or interest that any other Person may have subsequently acquired solely as a direct or indirect transferee of any such right, title or interest of the Cuban State, JASA is the sole rightful owner of all right, title and interest in and to, the Know-How, the Trademarks, the Registrations, the Designs, and the Books and Records, free and clear of all Liens. JASA is the sole rightful owner of all right, title and interest in and to the Claim Rights, free and clear of all Liens.

(e) <u>Infringements</u>. JASA has granted no Intellectual Property Rights in respect of the Know-How, the Trademarks, the Registrations, the Designs or the Books and Records to any Person. The use by the Purchaser (or any transferee or licensee thereof) of the Know-How, the Trademarks, the Registrations, the Designs and the Books and Records will not infringe upon or violate any Intellectual Property Right of any Person, other than (i) any Intellectual Property Right that the Cuban State may have acquired in respect of the Know-How, the Trademarks, the Registrations, the Designs, or the Books and Records as a result of the enactment and entry into force of Cuban Law No. 890, and (ii) any Intellectual Property Right that

April 18, 1997

BAC 00987
CONFIDENTIAL - ATTORNEYS'
EYES ONLY

- 14 -

any other Person may have acquired solely as a direct or indirect transferee of any such Intellectual Property Right of the Cuban State.

**3.2     Representations and Warranties of the Participating Interest Holders.** To induce the Purchaser to acquire the Purchased Assets, each Participating Interest Holder hereby makes the following representations and warranties, as of the date hereof, as follows:

(a)     **Capacity.** The Participating Interest Holder has full legal capacity to execute and to deliver this Agreement and the documents and instruments to be executed and delivered by the Participating Interest Holder pursuant thereto.

(b)     **Enforceability.** This Agreement and the documents and instruments to be executed and delivered by the Participating Interest Holder pursuant hereto constitute or, when executed and delivered pursuant hereto, will constitute legal, valid and binding agreements of the Participating Interest Holder, enforceable against the Participating Interest Holder in accordance with their respective terms, except to the extent that (a) such enforcement may be subject to any proceedings, subsequent to the date hereof, under any bankruptcy, insolvency, reorganization, moratorium or other laws, now or hereafter in effect, relating to or limiting creditors' rights generally and (b) the remedy of specific performance and injunctive and other forms of equitable relief may be subject to equitable defenses or to the discretion of the court before which any proceeding therefor may be brought.

**3.3     Representations and Warranties of the Sellers.** Schedule 2.5(a) accurately reflects the direct and indirect beneficial interests of the Participating Interest Holders and the Non-Participating Interest Holders in JASA.

## ARTICLE 4

## REPRESENTATIONS AND WARRANTIES OF THE PURCHASER

To induce the Seller to sell the Purchased Assets to the Purchaser, the Purchaser hereby represents and warrants to the Sellers, as of the date hereof, as follows:

H:\GENERAL\IRVIN\JASA.3                                                     April 18, 1997

BAC 00988
CONFIDENTIAL - ATTORNEYS'
EYES ONLY

- 15 -

**4.1**    Corporate Organization and Good Standing. The Purchaser is a corporation duly organized, validly existing and in good standing under the laws of Liechtenstein. The Purchaser was incorporated on April 2, 1997.

**4.2**    **Authorization.** The Purchaser has all requisite power, authority and capacity (a) to enter into this Agreement, (b) to take, perform and execute all proceedings, acts and instruments required by it to consummate the purchase of the Purchased Assets from the Sellers in accordance with the terms hereof, and (c) to fulfill its obligations hereunder. The execution and delivery by the Purchaser of this Agreement and any other documents and instruments to be executed and delivered pursuant hereto, and the consummation by the Purchaser of the transactions contemplated hereby, have been duly and validly authorized by all necessary organizational action of the Purchaser. No other organizational proceeding in respect of the Purchaser is necessary under any provision of law to authorize the execution and delivery by the Purchaser of this Agreement and any other documents and instruments to be executed and delivered by the Purchaser pursuant hereto or to consummate the transactions contemplated hereby. This Agreement has been duly and validly executed and delivered by the Purchaser.

**4.3**    Enforceability. This Agreement and the documents and instruments to be executed and delivered by the Purchaser pursuant hereto constitute or, when executed and delivered pursuant hereto, will constitute legal, valid and binding agreements of the Purchaser, enforceable against the Purchaser in accordance with their respective terms, except to the extent that (a) such enforcement may be subject to any proceedings, subsequent to the date hereof, under any bankruptcy, insolvency, reorganization, moratorium or other laws, now or hereafter in effect, relating to or limiting creditors' rights generally and (b) the remedy of specific performance and injunctive and other forms of equitable relief may be subject to equitable defenses or to the discretion of the court before which any proceeding therefor may be brought.

BAC 00989
CONFIDENTIAL - ATTORNEYS'
EYES ONLY

- 16 -

## ARTICLE 5

### COVENANTS OF THE PARTIES

5.1    Cooperation; Further Assurances.

(a)    Each party shall cooperate reasonably with the other in preparing and filing all notices, applications, reports and other instruments and documents which are required by any statute, rule, regulation or order of any Governmental Authority in connection with the transactions contemplated by this Agreement, including the transfer, assignment and conveyance of the Trademarks, the Registrations or the Designs to the Purchaser (or any transferee or licensee of the Purchaser). Without limitation of the foregoing, from and after the date of this Agreement, each party shall from time to time, at the request of the other party and without further cost or expense to such requesting party, execute and deliver such other instruments of conveyance and transfer and take such other actions as such other party may reasonably request in order more effectively to carry out this Agreement and to vest in the Purchaser (or any transferee of the Purchaser) good and marketable title to the Purchased Assets.

(b)    Without limitation of the foregoing, each Seller shall cooperate with the Purchaser in any efforts by the Purchaser (or any transferee or licensee of the Purchaser) to reclaim all rights in respect of the Know-How, the Trademarks, the Registrations, the Designs, and the Claim Rights, including participation, at the request of the Purchaser (or such transferee or licensee, as the case may be) and at the sole cost and expense of the Purchaser (or such transferee or licensee, as the case may be), in any legal proceedings aimed at obtaining registration of the Trademarks in the name of the Purchaser (or such transferee or licensee, as the case may be) or cancellation of similar registrations in the name of other Persons.

(c)    Without limitation of the foregoing, should any Seller in the future obtain, receive or be granted, from or by any Person whatsoever and for any reason whatsoever, any right, title or interest in or to the Know-How, the Trademarks, the Registrations, the Designs or the Claim Rights, such Seller shall immediately give notice thereof to the Purchaser (and any transferee or licensee of the Purchaser) and shall forthwith convey, transfer and deliver all of such right, title

BAC 00990
CONFIDENTIAL - ATTORNEYS'
EYES ONLY

or interest to the Purchaser (or such transferee or licensee, as the case may be) without any consideration other than the consideration provided for in this Agreement.

(d)     Without limitation of the foregoing, should any Seller learn of any plan, program, approach, offer or negotiation pursuant to which the Cuban government might be prepared to return the *"Havana Club"* trademark or the *"Arechabala"* trademark to the original owner or such owner's successor in title, or otherwise to transfer such trademark, whether or not in conjunction with any of the physical assets confiscated from JASA or any other assets, such Seller shall immediately notify the Purchaser (and any transferee or licensee of the Purchaser) and such Seller shall consult with the Purchaser (and such transferee or licensee) concerning any resulting lawful opportunity for the Purchaser (or such transferee or licensee) to recover such trademark or for such Seller or the Purchaser to recover any other asset in respect of which such Seller or the Purchaser may have a claim.

5.2     Confidentiality.   The parties hereto shall keep all information relating to the Purchased Assets, this Agreement or the transactions contemplated hereby strictly confidential, except that disclosure of such information shall be permitted (i) in the event and to the extent that such disclosure is required by applicable law, or (ii) in connection with any agreement between the Purchaser and BACO.   Notwithstanding any other provision of this Agreement, the obligations established on this Section 5.2 shall expire on July 24, 2006.

5.3     Use of Trademarks.

(a)     Each Seller covenants and agrees that, from and after the Closing, such Seller shall not use the trademark or trade name *"Havana Club"*, or any variant thereof, or any other trademark or trade name likely to be confusingly similar thereto or any derivative thereof, for any purpose whatsoever and in any circumstance whatsoever.

(b)     Each Seller covenants and agrees that, from and after the Closing, such Seller shall not use the trademark or trade name *"Arechabala"*, or any variant thereof, or any other trademark or trade name likely to be confusingly similar thereto or any derivative thereof, for any purpose whatsoever and in any circumstance whatsoever, except (i) within the strict boundaries of the license set forth in paragraph (c) of this Section 5.3, or (ii) with the prior written consent of the Purchaser, but if

BAC 00991
CONFIDENTIAL - ATTORNEYS'
EYES ONLY

- 18 -

the Purchaser should have transferred (by sale, license or otherwise) to BACO or another transferee (or subsequent transferee) all of the Purchaser's right, title and interest to use such trademarks or trade names in a particular field of use, then only with the prior written consent of BACO or such transferee (or subsequent transferee), as the case may be, in respect of such particular field of use.

(c)     The Purchaser hereby grants a royalty-free license to each Seller to use all of the Purchaser's right and interest in and to the trademarks and trade names referred to in paragraph (b) of this Section 5.3 in any activity except in or in connection with the manufacture, distribution, marketing or sale of rum or rum-based alcoholic beverages anywhere in the world.  This license may be terminated at any time by the Purchaser by reasonable notice to the Sellers.

(d)     Each Seller shall consult with the Purchaser before using any trademark or trade name referred to in paragraph (b) of this Section 5.3 in or in connection with any alcoholic beverages other than rum or rum-based alcoholic beverages.  Should the Purchaser have transferred (by sale, license, or otherwise) to BACO or another transferee (or subsequent transferee) all of the Purchaser's right, title and interest to use such trademarks or trade names in or in connection with the manufacture, distribution, marketing or sale of rum or rum-based alcoholic beverages, such consultation shall be made with BACO or such another transferee (or subsequent transferee).  Notwithstanding the license set forth in paragraph (c) of this Section 5.3, none of the Sellers shall use any such trademark or trade name on or in connection with any alcoholic beverages that, in the reasonable judgment of the Purchaser (or BACO or any such transferee or subsequent transferee, as the case may be), tarnish or devalue any product of the Purchaser (or BACO or any such transferee or subsequent transferee, as the case may be) bearing any such trademark or trade name.

5.4     <u>Benefit and Assignability of Covenants.</u>  For the avoidance of doubt, the covenants made by the Sellers in this Article 5 are made for the benefit of the Purchaser and any and all subsequent transferees, including BACO, and may be assigned by the Purchaser to any such transferee (including BACO) and by any such transferee to any subsequent transferee.

April 18, 1997

BAC 00992
CONFIDENTIAL - ATTORNEYS'
EYES ONLY

- 19 -

**5.5** **Use of Retained Commission and Payment of Expenses.** The Purchaser shall use funds from the Retained Commission to pay all fees, costs, and expenses of any kind whatsoever that JASA or the Purchaser may have incurred or may incur in the future in connection with (i) this Agreement, any other agreement between the parties hereto related to the Trademarks, any agreement between any of the parties hereto and BACO, or any and all acts, notices, agreements or other transactions with the Participating Interest Holders or the Non-Participating Interest Holders concerning this Agreement or the matters covered hereby, (ii) any fees, costs or expenses related to the administration of JAI, or (iii) any other corporate purposes of the Purchaser. Should the Retained Commission be insufficient to pay such fees, costs, and expenses, JASA shall pay the deficiency, and should JASA fail to do so, the Participating Interest Holders shall be responsible for such payment, in proportion to their respective percentage interests as set forth in Schedule 2.2(d). Should any Non-Participating Interest Holder become a party to this Agreement pursuant to Section 2.5, such Non-Participating Interest Holder shall pay to JASA or the Participating Interest Holders who paid or contributed to pay any such deficiency (as the case may be) the *pro rata* share of such Non-Participating Interest Holder as set forth in Schedule 2.2(d). Notwithstanding any other provision of this Agreement, the Purchaser shall be entitled to deduct, from any payment due hereunder to JASA or any of the Participating Interest Holders or Non-Participating Interest Holders, an amount not to exceed any amount due by the recipient of such payment pursuant to this Section 5.4.


## ARTICLE 6

## INDEMNIFICATION

**6.1** **Effectiveness of Representations, Warranties and Covenants.** All representations, warranties and covenants made by either party in this Agreement shall remain in effect after the execution of this Agreement and the consummation of the transactions contemplated hereby and shall continue in effect for so long as the obligations of the parties hereunder shall have not been fully discharged.

H:\GENERAL\IRVIN\JASA 3                                          April 18, 1997

BAC 00993
CONFIDENTIAL - ATTORNEYS'
EYES ONLY

- 20 -

**6.2**     Indemnification.

(a)     Each Seller hereby agrees to indemnify and to hold harmless each member of the Purchaser Group from and against all Damages asserted against, imposed upon or incurred by any such member of the Purchaser Group, directly or indirectly, by reason of or resulting from, any breach or inaccuracy of any representation, warranty or covenant of such Seller set forth in this Agreement.

(b)     The Purchaser hereby agrees to indemnify and to hold harmless each member of each Seller Group from and against all Damages asserted against, imposed upon or incurred by any such member of such Seller Group, directly or indirectly, by reason of or resulting from any breach or inaccuracy of any representation, warranty or covenant of the Purchaser set forth in this Agreement.

**6.3**     Exclusive Remedy.     The transactions consummated at the Closing shall not be subject to rescission, resolution, termination, or undoing for any reason whatsoever.  The sole and exclusive remedies available at law or in equity in respect of any Claim that may arise under this Agreement or in connection therewith shall be (i) indemnification under Section 6.2 and also (ii) solely in respect of any Claim arising under any provision of Article 5, equitable remedies, including injunctive relief.

**6.4**     Limitation on Indemnification.     Notwithstanding anything in this Agreement to the contrary, but without prejudice to the right of each party to equitable remedies, the obligation of the parties to indemnify under this Agreement shall be subject to the following limitations:

(a)     Any indemnification amount to be paid by any of the Sellers under this Agreement at any given time shall be subject to reduction to such extent as may be necessary so that such amount, added to the aggregate amount theretofore paid by such Seller as indemnification under this Agreement, shall not exceed the aggregate amount received by such Seller from the Purchaser pursuant to this Agreement until such time.  Any Claim that remains unpaid, in whole or in part, by reason of the operation of this provision shall remain an obligation of such Seller for the duration of this Agreement, to be set off against any payment that the Purchaser may thereafter be  required to make under this Agreement.

BAC  00994
CONFIDENTIAL - ATTORNEYS'
EYES ONLY

- 21 -

(b)     Any indemnification amount to be paid by the Purchaser under this Agreement at any given time shall be subject to reduction to such extent as may be necessary so that such amount, added to the aggregate amount theretofore paid by the Purchaser as indemnification under this Agreement, shall not exceed the aggregate amount paid by the Purchaser to the Sellers pursuant to this Agreement until such time. Any Claim that remains unpaid, in whole or in part, by reason of the operation of this provision shall remain an obligation of the Purchaser for the duration of this Agreement, to be paid to the extent of any payments that the Purchaser may thereafter be required to make under this Agreement.

## ARTICLE 7

## MISCELLANEOUS PROVISIONS

7.1     <u>Execution in Counterparts; Effectiveness</u>. This Agreement may be executed in two or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument. This Agreement shall become effective upon execution and delivery by all parties.

7.2     <u>Notices</u>.

(a)     All notices, requests, demands and other communications which are required or may be given pursuant to the terms of this Agreement shall be in writing and shall be deemed delivered (i) on the date of delivery when delivered by hand, (ii) on the date of transmission when sent by facsimile transmission during normal business hours with telephone confirmation of receipt, (iii) on the date following the date of transmission, when sent by facsimile transmission after normal business hours, (iv) two (2) days after dispatch when sent by a reputable courier service that maintains records of receipt, or (v) five (5) days after dispatch when sent by certified mail, postage prepaid, return-receipt requested; provided that, in any such case, such communication shall be addressed as provided in the immediately following paragraph (b).

(b)     All notices, requests, demands and other communications which are required or may be given pursuant to the terms of this Agreement shall be addressed as follows:



H 'GENERAL'IRVINE'ASA 3                                              April 18, 1997

BAC 00995
CONFIDENTIAL - ATTORNEYS'
EYES ONLY

- 22 -

(i)    If to JASA:

José Arechabala S.A. (in liquidation)
c/- LGT Treuhand AG
Städtle 18-22
Vaduz
Liechtenstein

with a copy to:
Bufete Sartorius y Asociados
c/- Covarrubias No. 7, 3o. IZQ
Madrid
Spain

Attention: Jacobo Sartorius
Telephone: 34-1-447-45-66
Facsimile: 34-1-447-48-91

(ii)    If to the Participating Interest Holders:

Jacobo Sartorius
Bufete Sartorius y Asociados
c/- Covarrubias No. 7, 3o. IZQ
Madrid
Spain

Telephone: 34-1-447-45-66
Facsimile: 34-1-447-48-91

H GENERAL·IRVIN·JASA 3

April 18, 1997

BAC 00996
CONFIDENTIAL - ATTORNEYS'
EYES ONLY

- 23 -

(iii)    If to the Purchaser:

Jose Arechabala International Ltd.
c/- LGT Treuhand AG
Städtle 18-22
Vaduz
Liechtenstein

with a copy to:
Bufete Sartorius y Asociados
c/- Covarrubias No. 7, 3o. IZQ
Madrid
Spain
Attention: Jacobo Sartorius
Telephone: 34-1-447-45-66
Facsimile: 34-1-447-48-91

or to such other address as any party shall have designated by notice in the foregoing manner to the other parties.

7.3     Waivers.  No waiver of any provision, condition or covenant of this Agreement shall be effective as against the waiving party unless such waiver shall be in writing and signed by the waiving party.  Waiver by a party as provided in this Section shall not be construed as, or constitute, either a continuing waiver of such provision, condition or covenant or a waiver of any other provision, condition or covenant hereof.  The failure of any party at any time to require performance by the other party of any provision, condition or covenant of this Agreement shall in no way affect its right thereafter to enforce the provision, condition or covenant.

7.4     Amendment.  This Agreement may be modified, supplemented or amended only by a written instrument executed by the parties thereto.

H:\GENERAL\IRVIN\JASA.3                                      April 18, 1997

BAC 00997
CONFIDENTIAL - ATTORNEYS'
EYES ONLY

- 24 -

7.5     Entire Agreement.  This Agreement (together with the Schedules and the Annexes expressly identified in this Agreement) constitutes the entire agreement of the parties with respect to the subject matter hereof and thereof, and supersedes all prior agreements and understandings of the parties, oral and written, in respect of such subject matter.

7.6     Applicable Law.   This Agreement shall be governed by and construed in accordance with the laws of the Islands of Bermuda without regard to conflict-of-laws principles.

7.7     Assignments.  This Agreement may not be assigned by any party hereto without the prior written consent of the other party.

7.8     Binding Effect; Benefits.  This Agreement shall redound to the benefit of, and be binding upon, the parties hereto and their respective successors and permitted assigns.  The parties hereto contemplate that, following the Closing, the Purchaser will sell, assign, and transfer to BACO substantially all of the Purchaser's right, title, and interest in and to the Purchased Assets as related to the trademark and trade name "*Havana Club*", and will grant a license to BACO to use the trademark and trade name "*Arechabala*" for certain purposes, and acknowledge that in entering into such transactions BACO will rely on the validity and effectiveness of this Agreement and the valid and effective consummation of the transactions contemplated hereby.  Except for the foregoing and the provisions of Articles 5 and 6, nothing contained in this Agreement, express or implied, is intended to confer upon any Person any rights or remedies under or by reason of this Agreement.

7.9     Schedules, Annexes and Other Agreements.  The Schedules, Annexes and other agreements specifically referred to in, and delivered pursuant to, this Agreement are an integral part of it.

H:\GENERAL\IRVIN\JASA 3

April 18, 1997

BAC 00998
CONFIDENTIAL - ATTORNEYS'
EYES ONLY

- 25 -

IN WITNESS WHEREOF, this Agreement has been executed by the parties
hereto, all as of the date first above written.

SELLERS:

JOSE ARECHABALA S.A.

By: _____
Name: F. RUIZ PITA
Title: Liquidator

By: _____
Name: JOSE H. ARECHABALA
Title: Liquidator

By: _____
Name: GABRIEL MALET
Title: Liquidator

PERSONS LISTED ON SCHEDULE 0.1

By: _____
Name: LUIS ARECHABALA
Title: Attorney-in-Fact

By: _____
Name: GABRIEL MALET
Title: Attorney-in-Fact

By: _____
Name: JOSE H. ARECHABALA
Title: Attorney-in-Fact

BAC 00999

CONFIDENTIAL - ATTORNEYS'
EYES ONLY

- 26 -

By: _____

Name: F. Ruiz Pita

Title: Attorney-in-Fact


**PURCHASER:**

JOSE   ARECHABALA   INTERNATIONAL
LTD.

By: _____

Name: José Manuel Arechabala Fernandez

Title: Director


By: _____

Name: Luis Emilio Arechabala Cifuentes

Title: Director


By: _____

Name: Fernando Ruiz Pita

Title: Attorney-in-Fact


By: _____

Name: Garbiel Malét Bustamante

Title: Attorney-in-Fact

April 18, 1997  4:23pm

BAC 01000

CONFIDENTIAL - ATTORNEYS'
EYES ONLY

- 27 -

## SCHEDULE 0.1

## PARTICIPATING INTEREST HOLDERS

| Name | Address |
|---|---|
| José María Arechabala y Arechabala | Plaza San Juan de la Cruz No. 1, Madrid 28003, Spain |
| José Miguel Arechabala y Arechabala | 121 - Zieglerville Road, Schwenksville, PA 19473-2213, USA |
| María Josefa Arechabala y Arechabala | c/- General Mola 36, Chalet 12, Pozuelo de Alarcon, Madrid 28224, Spain |
| María Catalina Arechabala y Arechabala | c/- Sandamendi No. 9, Gordejuela, Bilbao 48192 |
| Ramón María Arechabala y Arechabala | 1262 - SW Street Florida 33145 Miami, USA |
| María del Carmen Arechabala Fernández | c/-Lerez No.4, Madrid 28002, Spain |
| José Manuel Arechabala Fernández | c/-Guadalquivir No. 18, Madrid, Spain |
| Isabel Arechabala Fernández | c/- Azulinas No. 4, Bajo 3, Madrid 28036, Spain |
| María Eugenia Elena Arechabala Fernández | c/- Santo Domingo de Silos No. 5, Madrid 28036, Spain |
| Nicolás Pita Arechabala | c/- Iris No. 142, el Soto de la Moraleja, Alcobendas, Madrid, Spain |
| Carmen Pita Arechabala | c/- Castello No. 86, Madrid 28006, Spain |
| Hispana Pita Arechabala | Camino de la Zarzuela Sin Número, Madrid 28023, Spain |
| Clara María Pita Arechabala | c/- Don Ramón de la cruz No. 23, 4o. Piso, Madrid 28001, Spain |
| María Elisa Pita Arechabala | c/- Claudio Coello No. 69, A, 5o.B, Madrid 28004, Spain |
| Gerardo Pita Arechabala | c/- Bolivia No. 13, 11o.C Piso, Madrid 28016, Spain |

BAC 01001

CONFIDENTIAL - ATTORNEYS
EYES ONLY

- 28 -

| Teresa Rodrigo Cabrales de Prat | c/- María de Molina No. 10, Madrid 28006, Spain |
|---|---|
| María Rosa Arechabala Rodrigo | c/- María de Molina No. 10, Madrid 28006, Spain |
| Mercedes Babé-Gónzalez Pita | c/- Celestino Junquera No. 1, 4o. Da., Gijón 33202 (Asturias), Spain |
| José María Riestra Pita | c/- Concha Espina No. 43, Madrid 28016, Spain |
| Antonio Riestra Pita | c/- Juan Sebastian Elcano No. 4, 5o. IZQ, Sevilla 41011, Spain |
| María Riestra Pita | c/- Zugazarte No. 20, 2o. Da, Guecho (Vizcaya), Spain |
| Raimundo Riestra Pita | c/- Montero Ríos No. 30, Vigo 36201, Pontevedra, Spain |
| María Concepción Pérez Lombard | Arteditxo Etxea, Bedoña Ausoa, Mondragón 20.500 (Guipuzcoa), Spain |
| Concepción Malet Pérez | Arteditxo Etxea, Bedoña Ausoa, Mondragón 20.500 (Guipuzcoa), Spain |
| María Mercedes Bustamante de la Gándara | c/- Club No. 2, 1o. IZQ, las Arenas, Bilbao (Vizcaya) Spain |
| Manuel Malet y Bustamante | c/- Víctor Chávarri No. 2, 5o., Bilbao (Vizcaya), Spain |
| Gabriel Malet y Bustamante | c/- Viuda de Epalza No. 12, 4o., Bilbao (Vizcaya), Spain |
| María José Malet y Bustamante | c/- Club No. 2, 1o. IZQ., las Arenas, Bilbao (Vizcaya), Spain |
| Cristina Arechabala Cifuentes | c/- Españoleto No. 13, 5o., Madrid 28036, Spain |
| Luis Emilio Arechabala Cifuentes | c/- Félix Boix No. 9, Madrid 28036, Spain |
| José Arechabala Cifuentes | c/- Manuel Cortína No. 6, Bajo IZQ., Madrid 28010, Spain |
| Compañía Azucarera Progreso S.A. | c/- LGT Treuhand AG, Städtle 18-22, Vaduz, Liechtenstein |

April 18, 1997

BAC 01002

CONFIDENTIAL - ATTORNEYS EYES ONLY

- 29 -

## SCHEDULE 2.1(a)

## KNOW-HOW

The attached formula was transcribed in 1960 by José María Arechabala Arechabala, then First Vice President and Acting President of José Arechabala S.A., and to the best of his recollection at the time (shortly after leaving Cuba), it is the exact formulation used by the Company for the manufacture of Havana Club rum.

BAC 01003
CONFIDENTIAL - ATTORNEYS'
EYES ONLY

- 30 -

## SCHEDULE 2.1(b)

## TRADEMARKS

a.        Trademark *"Havana Club"* for rum and/or rum products, and any variant thereof.

b.        Trademark *"Arechabala"* for all products, and any variant thereof.

BAC 01006

CONFIDENTIAL - ATTORNEYS'
EYES ONLY

- 31 -

## SCHEDULE 2.1(c)

## REGISTRATIONS

[See Attached]

H:\GENERAL\IRVDN\JASA.3

April 18, 1997

BAC 01007

CONFIDENTIAL - ATTORNEYS'
EYES ONLY

- 32 -

SCHEDULE 2.1(d)

DESIGNS

[See Attached]

April 18, 1997

BAC 01008
CONFIDENTIAL - ATTORNEYS'
EYES ONLY



BAC 01009
CONFIDENTIAL - ATTORNEYS'
EYES ONLY



BAC 01010

CONFIDENTIAL - ATTORNEYS'
EYES ONLY



BAC 01011

CONFIDENTIAL - ATTORNEYS'
EYES ONLY



BAC 01012
CONFIDENTIAL · ATTORNEYS'
EYES ONLY



BAC 01013
CONFIDENTIAL - ATTORNEYS'
EYES ONLY

SCHEDULE 2.1 (a) DESIGNS



BAC 01014

CONFIDENTIAL - ATTORNEYS'
EYES ONLY



BAC 01015

CONFIDENTIAL - ATTORNEYS'
EYES ONLY



BAC 01016
CONFIDENTIAL - ATTORNEYS'
EYES ONLY





BAC 01017
CONFIDENTIAL - ATTORNEYS'
EYES ONLY



BAC 01018
CONFIDENTIAL - ATTORNEYS'
EYES ONLY



BAC 01019
CONFIDENTIAL · ATTORNEYS·
EYES ONLY



BAC 01020

CONFIDENTIAL - ATTORNEYS'
EYES ONLY



BAC 01021

CONFIDENTIAL - ATTORNE
EYES ONLY



BAC 01022

CONFIDENTIAL - ATTORNEYS'
EYES ONLY



BAC 01023
CONFIDENTIAL - ATTORNEYS'
EYES ONLY



BAC 01024

CONFIDENTIAL - ATTORNEYS'
EYES ONLY



BAC 01025

CONFIDENTIAL - ATTORNEYS'
EYES ONLY



BAC 01026
CONFIDENTIAL - ATTORNEYS'
EYES ONLY

- 33 -

## SCHEDULE 2.2(d)

### PERCENTAGE INTERESTS

| Participating Interest Holders | % |
|---|---|
| José María Arechabala y Arechabala | 9.235 |
| José Miguel Arechabala y Arechabala | 8.493 |
| María Josefa Arechabala y Arechabala | 4.243 |
| María Catalina Arechabala y Arechabala | 4.243 |
| Ramón María Arechabala y Arechabala | 4.318 |
| María del Carmen Arechabala Fernández | 0.296 |
| José Manuel Arechabala Fernández | 0.296 |
| María Eugenia Elena Arechabala Fernández | 0.296 |
| Isabel Arechabala Fernández | 0.296 |
| Nicolás Pita Arechabala | 2.607 |
| Carmen Pita Arechabala | 2.607 |
| Hispana Pita Arechabala | 2.607 |
| Clara María Pita Arechabala | 2.607 |
| María Elisa Pita Arechabala | 2.607 |
| Gerardo Pita Arechabala | 2.607 |
| Teresa Rodrigo Cabrales de Prat | 1.775 |
| María Rosa Arechabala Rodrigo | 1.100 |
| Mercedes Babé-Gónzalez Pita | 0.521 |
| José María Riestra Pita | 0.521 |
| Antonio Riestra Pita | 0.521 |
| María Riestra Pita | 0.521 |
| Raimundo Riestra Pita | 0.521 |
| María Concepción Pérez Lombard | 3.133 |
| Concepción Malet Pérez | 6.267 |
| María Mercedes Bustamante de la Gándara | 3.142 |

April 18, 1997

BAC 01027

CONFIDENTIAL - ATTORNEYS'
EYES ONLY

- 34 -

| | |
|---|---|
| Manuel Malet y Bustamante | 2.094 |
| Gabriel Malet y Bustamante | 2.094 |
| María José Malet y Bustamante | 2.094 |
| Cristina Arechabala Cifuentes | 0.367 |
| Luis Emilio Arechabala Cifuentes | 0.367 |
| José Arechabala Cifuentes | 0.367 |
| Compañía Azucarera Progreso S.A. | 17.525 |
| **Non-Participating Interest Holders** | **%** |
| María Victoria Arechabala Fernández | 0.296 |
| José Antonio Márquez Arechabala | 1.116 |
| Gloria María Márquez Arechabala | 2.299 |
| Francisco Javier Márquez Arechabala | 2.324 |
| Estate of Francisco Javier Peralta Heydrich | 0.025 |
| Estate of Cornelio Lartitegui y Achirica | 1.800 |
| Estate of José Antonio Arechabala y Hurtado de Mendoza | 1.025 |
| Estate of Ramón Arechabala y Torrontegui | 0.825 |

BAC 01028
CONFIDENTIAL - ATTORNEYS'
EYES ONLY

- 35 -

## ANNEX 2.4

## FORM OF THE BILL OF SALE

This **BILL OF SALE** made, executed, and delivered as of April 17, 1997, by **JOSE ARECHABALA S.A. (IN LIQUIDATION)** a corporation organized and existing under the laws of Cuba and currently in liquidation (hereinafter referred to as "JASA") and **EACH OF THE PERSONS LISTED ON SCHEDULE 0.1**, in his individual capacity and in respect of his own right and interest (each such Person hereinafter referred to as a "Participating Interest Holder" and all Participating Interest Holders and JASA hereinafter collectively referred to as the "Sellers") to and in favor of **JOSE ARECHABALA INTERNATIONAL LTD.**, a corporation organized and existing under the laws of Liechtenstein (hereinafter referred to as the "Purchaser");

## W I T N E S S E T H:

**WHEREAS** each of the Seller and the Purchaser have heretofore entered into a certain agreement titled Agreement on the Purchase and Sale of Intellectual Property and Rights and Claims Concerning Thereto, dated as of April 17, 1997 (hereinafter referred to as the "Agreement"), pursuant to which the Seller has agreed to sell, assign, convey, and deliver to the Purchaser certain assets described with particularity in Section 2.1 of the Agreement and the respective schedules thereto (hereinafter referred to as the "Purchased Assets");

NOW THEREFORE:

**KNOW ALL MEN BY THESE PRESENTS**, that each Seller, for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, has conveyed, granted, bargained, transferred, set over, assigned, alienated, remised, released, delivered and confirmed, and by this Bill of Sale does convey, grant, bargain, transfer, set over, assign, alienate, remise, release, deliver and confirm, unto the Purchaser, its successors and assigns forever, all of such Seller's right, title and interest to all of the Purchased Assets.

**TO HAVE AND TO HOLD** all of the Purchased Assets unto the Purchaser, and its successors and assigns, to its and their own use forever, and such Seller does for itself, its successors and assigns, covenant and agree, to the extent provided for in the Agreement, to warrant and defend the assignment and conveyance of the Purchased Assets to the Purchaser, its successors and assigns, against all and every person and persons whomever claiming an interest therein.

**EACH SELLER DOES HEREBY** constitute and appoint the Purchaser, and its successors and assigns, as such Seller's true and lawful attorney, with full power of substitution, in such Seller's name and stead, but on behalf and for the benefit of the Purchaser, and its successors and assigns, to demand and to receive any and all

BAC 01029

CONFIDENTIAL - ATTORNEYS'
EYES ONLY

- 36 -

of the Purchased Assets, and to give receipts and release for and in respect of the same, and any part thereof, and from time to time to institute and prosecute in such Seller's name or otherwise, for the benefit of the Purchaser, and its successors and assigns, any and all proceedings at law, in equity or otherwise that the Purchaser, and its successors and assigns, may deem proper for the collection or reduction to possession of any of the Purchased Assets or for the collection and enforcement of any claim or right of any kind hereby sold, conveyed, transferred and assigned, or intended so to be, and to do all acts and things in relation to the Purchased Assets that the Purchaser, and its successors and assigns, deems desirable, such Seller hereby declaring that the foregoing powers are coupled with an interest and are and shall be irrevocable by such Seller or by the dissolution of such Seller or in any manner or for any reason whatsoever, provided, however, that should there be any inconsistency between this Bill of Sale and the Agreement, the Agreement shall prevail.

IN WITNESS WHEREOF, the Sellers have caused this Bill of Sale to be executed and delivered as of the date and year first above written.

[SEAL]                    JOSE ARECHABALA S.A. (in liquidation)

_____    By:  _____
Witness                   Title:


                          EACH OF THE PARTICIPATING INTEREST
                          HOLDERS


_____    By:  _____
Witness                   Title:  Attorney-in-Fact

_____    By:  _____
Witness                   Title:  Attorney-in-Fact

_____    By:  _____
Witness                   Title:  Attorney-in-Fact

_____    By:  _____
Witness                   Title:  Attorney-in-Fact

H:\GENERAL\IRVD\JASA.3                          April 18, 1997

BAC 01030
CONFIDENTIAL - ATTORNEYS'
EYES ONLY

- 37 -

## ANNEX 2.5

## FORM OF THE NOTICE OF ACCESSION AND BILL OF SALE

THIS NOTICE OF ACCESSION AND BILL OF SALE is made, executed, and delivered as of _____, ___, by the Undersigned, _____, domiciled in _____, to and for the benefit of **JOSE ARECHABALA INTERNATIONAL LTD.**, a corporation organized and existing under the laws of Liechtenstein (hereinafter referred to as "JAI").

WHEREAS the Undersigned is a Non-Participating Interest Holder, as this term is defined in a certain agreement titled Agreement on the Purchase and Sale of Intellectual Property and Rights and Claims Related Thereto, dated as of April 17, 1997 (hereinafter referred to as the "Transfer Agreement"), by and between José Arechabala S.A. (in liquidation), a *sociedad anónima* organized and existing under the laws of Cuba and currently in liquidation (hereinafter referred to as ("JASA"), certain holders of direct or indirect beneficial interests in JASA, and JAI;

WHEREAS under Section 2.05 of the Transfer Agreement a Non-Participating Interest Holder is entitled to become a party to the Transfer Agreement by accession, upon the terms and subject to the conditions specified in the Transfer Agreement, by executing and delivering to JAI a Notice of Accession and Bill of Sale in the form hereof; and

WHEREAS the Undersigned desires to accede to the Transfer Agreement and to sell, assign, transfer, convey, and deliver to JAI any and all Additional Title (as this term is defined in the Transfer Agreement) that the Undersigned may have in and to the Purchased Assets (as this term is defined in the Transfer Agreement);

NOW, THEREFORE, in consideration of the benefits accruing under the Transfer Agreement to a Non-Participating Interest Holder who becomes a party to such agreement, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Undersigned does hereby declare and agree as follows:

## ARTICLE I

## ACCESSION TO THE TRANSFER AGREEMENT

1.1     <u>Interpretation and Application.</u> Capitalized terms not otherwise defined herein have the meaning ascribed thereto in the Transfer Agreement. This

BAC 01031

CONFIDENTIAL - ATTORNEYS'
EYES ONLY

- 38 -

Notice of Assignment and Bill of Sale is subject to all of the provisions of the Transfer Agreement, in particular those of Articles 1 and 7 thereof.

1.2     **Accession.**  The Undersigned does hereby accede to the Transfer Agreement and agrees to be bound by all of its provisions, and to become, from and after the receipt by JAI of this Notice of Accession and Bill of Sale, a party to the Transfer Agreement, subject to all of the obligations and entitled to all of the rights pertaining to an acceding Non-Participating Interest Holder under the Transfer Agreement.

1.3     **Representations and Warranties.**  The Undersigned hereby makes in respect of himself or herself, as of the date hereof, and with the same force and effect as if they were set out in full:  (i) the representations and warranties set forth in Sections 3.2 and 3.3 of the Transfer Agreement, and (ii) the same representations and warranties set forth in Section 3.2 but in respect of this Notice of Accession and Bill of Sale.

1.4     **Ratification.**  The Undersigned hereby ratifies, consents, and agrees, to all acts heretofore performed by JASA, the Participating Interest Holders, and JAI, or each of them, pursuant to the Transfer Agreement.

1.5     **Benefit.**  This notice of accession is made also for the benefit of JASA and the Participating Interest Holders.  The Undersigned requests JAI to deliver copies of this Notice of Accession and Bill of Sale to JASA and to the Participating Interests Holders.


## ARTICLE II

## BILL OF SALE

2.1     **Conveyance.**  KNOW ALL MEN BY THESE PRESENTS, that the Undersigned, for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, has conveyed, granted, bargained, transferred, set over, assigned, alienated, remised, released, delivered and confirmed, and by this Bill of Sale does convey, grant, bargain, transfer, set over, assign, alienate, remise, release, deliver and confirm, unto JAI, its successors and assigns forever, all of the Undersigned's right, title and interest to all of the Purchased Assets.

TO HAVE AND TO HOLD all of the Purchased Assets unto JAI, and its successors and assigns, to its and their own use forever, and the Undersigned does for itself, its successors and assigns, covenant and agree, to the extent provided for in the Agreement, to warrant and defend the assignment and conveyance of the Purchased Assets to JAI, its successors and assigns, against all and every person and persons whomever claiming an interest therein.

April 18, 1997

BAC 01032

CONFIDENTIAL - ATTORNEYS'
EYES ONLY

- 39 -

**2.2.    Power of Attorney.** The Undersigned does hereby constitute and appoint JAI, and its successors and assigns, as the Undersigned's true and lawful attorney, with full power of substitution, in the Undersigned's name and stead, but on behalf and for the benefit of JAI, and its successors and assigns, to demand and to receive any and all of the Purchased Assets, and to give receipts and release for and in respect of the same, and any part thereof, and from time to time to institute and prosecute in the Undersigned's name or otherwise, for the benefit of JAI, and its successors and assigns, any and all proceedings at law, in equity or otherwise that JAI, and its successors and assigns, may deem proper for the collection or reduction to possession of any of the Purchased Assets or for the collection and enforcement of any claim or right of any kind hereby sold, conveyed, transferred and assigned, or intended so to be, and to do all acts and things in relation to the Purchased Assets that JAI, and its successors and assigns, deems desirable, the Undersigned hereby declaring that the foregoing powers are coupled with an interest and are and shall be irrevocable by the Undersigned or by the dissolution of the Undersigned or in any manner or for any reason whatsoever, provided, however, that should there be any inconsistency between this Bill of Sale and the Transfer Agreement, the Transfer Agreement shall prevail.

**IN WITNESS WHEREOF**, the Undersigned has caused this Notice of Accession and Bill of Sale to be executed and delivered as of the date and year first above written.

[SEAL]

_____     By: _____
Witness                                          Name:

BAC 01033

CONFIDENTIAL - ATTORNEYS'
EYES ONLY