**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

---

BACARDI & COMPANY LIMITED,

and

BACARDI U.S.A., INC.,

                Plaintiffs,

     v.

EMPRESA CUBANA EXPORTADORA
DE ALIMENTOS Y PRODUCTOS
VARIOS d/b/a CUBAEXPORT,

                Defendant.

Case No. 1:04-cv-00519 (EGS)

---

**MEMORANDUM OPINION**

Bacardi & Company Limited and Bacardi U.S.A., Inc. (collectively "Bacardi") initiated this action against Empresa Cubana Exportadora de Alimentos y Productos Varios d/b/a Cubaexport ("Cubaexport") over a trademark dispute. Cubaexport now brings a counterclaim against Bacardi under section 32 of the Trademark Act of 1946 ("Lanham Act"), 15 U.S.C. § 1114, seeking injunctive relief for Bacardi's alleged infringement of Cubaexport's registered HAVANA CLUB & Design trademark, Registration No. 1,031,651. *See* Cubaexport's Countercl. and Answer to First Am. Compl. ("Countercl."), ECF No. 154 ¶ 11. Pending before the Court is Bacardi's Motion to Dismiss Cubaexport's Counterclaim. *See* Pls.' Mot. to Dismiss Def.'s

1

Countercl. ("Pls.' MTD"), ECF No. 156 at 1.[1]

Upon careful consideration of the motion, opposition, reply thereto, the applicable law, and the entire record herein, the Court **GRANTS** Bacardi's Motion to Dismiss Cubaexport's Counterclaim, *see* ECF No. 156.

## I. Background[2]

The Court assumes the facts alleged in Cubaexport's Counterclaim to be true for the purposes of the Motion to Dismiss and construes them in Cubaexport's favor. *See Baird v. Gotbaum*, 792 F.3d 166, 169 n.2 (D.C. Cir. 2015) ("Reviewing a motion to dismiss, [w]e accept [her] factual allegations . . . as true and we draw all inferences in her favor." (internal quotation marks omitted)); *Comm. on Ways & Means, U.S. House of Representatives v. U.S. Dep't of the Treasury*, 45 F.4th 324, 329-30 (D.C. Cir. 2022) (applying standard to counterclaims).

### A. Factual Background

In the 1950s, José Arechabala S.A. ("JASA"), a Cuban company, registered three HAVANA CLUB trademarks at the U.S.

---

[1] When citing to filings throughout this Memorandum Opinion, the Court cites to the ECF header page number and not the original page number of the filed document.
[2] The Court limits this Background to the facts and procedural history relevant to the current motion. A more detailed history of the case can be found in the Court's previous opinion addressing Defendants' Motion to Dismiss and Motion for Partial Summary Judgment. *See* Mem. Op. ("Def.'s MTD Op."), ECF No. 146 at 2-11.

Patent and Trademark Office. Countercl., ECF No. 154 ¶¶ 13, 15. In 1960, JASA's property in Cuba was nationalized following the Cuban Revolution. *Id.* ¶ 16. However, JASA's U.S. trademarks were not expropriated but were either expired or cancelled because of JASA's former owners' failure to renew or otherwise maintain the marks. *Id.* ¶¶ 18-20.

In 1965, the Cuban Ministry of Foreign Commerce established Cubaexport, a Cuban state-owned foreign trade corporation. *Id.* ¶ 25. In 1974, Cubaexport submitted an application to the U.S. Patent and Trademark Office to register the HAVANA CLUB trademark, since JASA's trademarks expired the year prior. *See id.* ¶¶ 24, 27. On January 27, 1976, the U.S. Patent and Trademark Office issued the registration to Cubaexport with Registration No. 1,031,651. *Id.* ¶ 31. Although Cubaexport may not sell its product in the United States due to the existing embargo against Cuba, *see id.* ¶ 27; Cubaexport's HAVANA CLUB rum has been branded, marketed, and sold in other parts of the world for the last 30 years, *id.* ¶ 39.

In 1995, Bacardi began selling Bahamian rum in the United States using the HAVANA CLUB name. *Id.* ¶ 44. However, Bacardi's application for registration of the mark was denied by the U.S. Patent and Trademark Office in March of that year, in part because the "proposed trademark conflicted with the existing trademark registration that had been issued to Cubaexport." *Id.*

¶ 47. Bacardi filed a petition with the Trademark Trial and
Appeal Board ("TTAB") to cancel Cubaexport's existing
registration. *Id.* ¶ 48. That petition was stayed while
Cubaexport's assignee Havana Club Holding S.A. ("HCH") pursued a
trademark infringement suit against Bacardi in New York federal
court. *See id.* ¶ 48; Def.'s MTD Op., ECF No. 146 at 9-10 ("The
proceeding before the TTAB was stayed pending the *Galleon*
litigation, but resumed in 2003."). After the conclusion of the
New York litigation, the TTAB granted summary judgment denying
Bacardi's petition to cancel Cubaexport's trademark registration
for the HAVANA CLUB mark. *See* Countercl., ECF No. 154 ¶ 61.

In 2006, Cubaexport's trademark registration was due for
renewal. *Id.* ¶ 63. The U.S. Treasury Department's Office of
Foreign Assets Control ("OFAC") notified Cubaexport that due to
legislation passed in 1998, Cubaexport would need to apply for a
specific license to renew its trademark registration. *See id.*
¶ 65. That July, OFAC denied Cubaexport's application for a
specific license based on the Department of State's position
that "it would be inconsistent with U.S. policy to issue a
specific license authorizing transactions related to the renewal
of the HAVANA CLUB trademark." *Id.* Cubaexport filed suit in the
District of Columbia challenging OFAC's decision and the
constitutionality of the statute which required Cubaexport to
obtain a specific license. *Id.* ¶ 67; *see also Empresa Cubana*

*Exportadora de Alimentos y Productos Varios v. U.S. Dep't of Treasury* ("*Cubaexport I*"), 606 F. Supp. 2d 59 (D.D.C. 2009). The district court entered summary judgment in favor of OFAC, in part because the issuance or refusal of a specific license was a matter of OFAC's discretion. *Cubaexport I*, 606 F. Supp. 2d at 81-82. The Court of Appeals for the District of Columbia Circuit ("D.C. Circuit") affirmed. *See Empresa Cubana Exportadora de Alimentos y Productos Varios v. U.S. Dep't of Treasury* ("*Cubaexport II*"), 638 F.3d 794 (D.C. Cir. 2011).

In 2015, Cubaexport filed a new application for a specific license with OFAC, asking for reconsideration of its previous decision based on shifts in U.S. foreign policy. *See* Countercl., ECF No. 154 ¶¶ 69-71. Cubaexport sought both a retroactive renewal of the mark from the 2006 denial, and a renewal for the upcoming 10-year period starting in 2016. *Id.* ¶ 71. OFAC granted Cubaexport a specific license on January 11, 2016, "authorizing all transactions necessary for the 2006 and 2016 renewals of Cubaexport's trademark registration." *Id.* ¶ 73. After the U.S. Patent and Trademark Office received a copy of the specific license, it accepted the 2006 and 2016 renewals for Cubaexport's HAVANA CLUB mark. *Id.* ¶ 74.

**B. Procedural Background**

Bacardi initiated this suit in 2004 to challenge the TTAB's grant of summary judgment to Cubaexport. *See* Compl., ECF No. 1

¶ 1. In 2007, this Court stayed the proceeding while Cubaexport pursued an appeal of the Patent and Trademark Office's determination that Cubaexport's rights in the HAVANA CLUB mark would be cancelled or expired based on Cubaexport's inability to renew the mark because of OFAC's denial of a specific license. *See* Mem. Op., ECF No. 72 at 1-5. In 2016, after Cubaexport received the specific licenses from OFAC, authorizing it to renew its rights in the HAVANA CLUB mark, the parties moved to lift the stay. *See* Joint Mot. and Status Report of All Parties Regarding Lifting of the Stay, Amendment of the Compl., Scheduling, and Protection of Confidential Information Obtained in Disc., ECF No. 112 at 1. In March 2016, this Court granted the parties' motion and lifted the stay. *See* Order, ECF No. 116 at 1.

Bacardi then filed its Amended Complaint, again seeking review of the TTAB's grant of summary judgment. *See* First Am. Compl., ECF No. 114 ¶ 1. The following month, Cubaexport filed a Motion to Dismiss and Motion for Partial Summary Judgment. *See* Defs.' Mot. to Dismiss the First Am. Compl., ECF No. 122; Defs.' Mot. for Partial Summ. J., ECF No. 124. In March 2023, this Court granted in part and denied in part Cubaexport's Motion to Dismiss and denied its Motion for Partial Summary Judgment. *See* Order, ECF No. 145.

In April 2023, Cubaexport filed its answer and the

6

counterclaim at issue, alleging trademark infringement under the
Lanham Act. *See* Countercl., ECF No. 154 ¶ 11. The following
month, Bacardi filed its Motion to Dismiss Cubaexport's
Counterclaim. *See* Pls.' MTD, ECF No. 156. Cubaexport filed its
response in opposition, *see* Notice of Errata to Def.'s Mem. of
P. & A. in Opp'n to Pl.'s Mot. to Dismiss Def.'s Countercl.
("Def.'s Opp'n"), ECF No. 159;[3] and Bacardi filed its reply,
Pls.' Reply Mem. of P. & A. in Further Supp. of Mot. to Dismiss
Def.'s Countercl., ECF No. 158. Bacardi's motion is now ripe and
ready for adjudication.

## II. Legal Standards

### A. Rule 12(b)(6) Motion to Dismiss

"When a plaintiff moves to dismiss a defendant's
counterclaims for failure to state a claim under Federal Rule of
Civil Procedure 12(b)(6), the Court applies the same standards
that it does when evaluating a motion to dismiss a plaintiff's
complaint on the same grounds." *Adirondack Transit Lines, Inc.
v. Greyhound Lines, Inc.*, No. 22-1662, 2023 WL 196245, at *3
(D.D.C. Jan. 17, 2023); *see also Wharf, Inc. v. District of
Columbia*, 232 F. Supp. 3d 9, 16 (D.D.C. 2017) ("The same

---

[3] Cubaexport originally filed a memorandum in opposition, *see*
Def.'s Mem. of P. & A. in Opp'n to Pl.'s Mot. to Dismiss Def.'s
Countercl., ECF No. 157; but later notified the Court of an
error in the original memorandum and submitted a corrected
document, *see* Def.'s Opp'n, ECF No. 159. The Court accepts and
will only reference Cubaexport's corrected brief in opposition.

standards govern a motion to dismiss with respect to an opposing party's counterclaims.").

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) "tests the legal sufficiency of a complaint." *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002). A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation marks omitted). While detailed factual allegations are not required, a complaint "must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).

When ruling on a Rule 12(b)(6) motion, the Court "may consider only the facts alleged in the complaint, any documents either attached to or incorporated in the complaint and matters of which we may take judicial notice." *EEOC v. St. Francis Xavier Parochial Sch.*, 117 F. 3d 621, 624 (D.C. Cir. 1997). In so doing, the court must give the plaintiff the "benefit of all inferences that can be derived from the facts alleged." *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements" are not sufficient to

state a claim. *Iqbal*, 556 U.S. at 678. The plaintiff must "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Twombly*, 550 U.S. at 555).

## III. Analysis

Bacardi argues that Cubaexport's counterclaim for trademark infringement should be dismissed on two grounds. First, Bacardi argues that Cubaexport is barred by statute from enforcing any rights it may have in the HAVANA CLUB mark. *See* Pls.' MTD, ECF No. 156 at 13. Second, Bacardi argues that even if Cubaexport's claim is not statutorily barred, it must be dismissed because "it is impossible for Cubaexport to establish a likelihood of confusion among consumers due to the Cuban embargo." *Id.* at 19. The Court agrees with Bacardi on its first ground—that Cubaexport's counterclaim is barred by statute.

### A. The Embargo and Section 211

In 1963, the United States imposed a total embargo on trade between the United States and Cuba under the Trading with the Enemy Act, 50 U.S.C. § 4301 *et. seq*, implemented by the Cuban Asset Control Regulations ("CACR"), 31 C.F.R. pt. 515. When originally enacted, the CACR permitted transactions related to the registration and renewal of trademarks in the United States under general licenses, and also authorized the Treasury Department's Office of Foreign Assets Control ("OFAC") to grant

9

specific licenses in individual cases. *See* 28 Fed. Reg. 6974, 6982-85 (July 9, 1963); *see also Cubaexport II*, 638 F.3d at 796 ("Under the regulations, exceptions may be specifically authorized by the Secretary of the Treasury . . . . Such exceptions may take two forms: A so-called 'general license' is a general exception written into the Treasury regulations themselves. A 'specific license' is an exception made by the Department of the Treasury for a specific applicant." (internal quotation marks and citations omitted)).

However, in 1998, Congress passed Section 211 of the Omnibus Consolidated and Emergency Supplemental Appropriations Act ("Section 211"), Pub. L. No. 105-277, § 211, 112 Stat. 2681, 2681-88, which curtailed the previous exceptions for trademarks. Specifically, Section 211 states:

> (a)(1) Notwithstanding any other provision of law, no transaction or payment shall be authorized or approved pursuant to section 515.527 of title 31, Code of Federal Regulations, as in effect on September 9, 1998, with respect to a mark, trade name, or commercial name that is the same as or substantially similar to a mark, trade name, or commercial name that was used in connection with a business or assets that were confiscated unless the original owner of the mark, trade name, or commercial name, or the bona fide successor-in-interest has expressly consented.
>
> (2) No U.S. court shall recognize, enforce or otherwise validate any assertion of rights by a designated national based on common law rights or registration obtained under such section 515.527 of such a confiscated mark, trade name or commercial name.

The referenced regulation, 31 C.F.R. § 515.527, was updated
to reflect Section 211, and now states that "[t]ransactions
related to the registration and renewal in the United States
Patent and Trademark Office or the United States Copyright
Office of patents, trademarks, and copyrights in which the
Government of Cuba or a Cuban national has an interest are
authorized." 31. C.F.R. § 515.527(a)(1). However:

> [n]o transaction or payment is authorized or
> approved . . . with respect to a mark, trade name,
> or commercial name that is the same or
> substantially similar to a mark, trade name, or
> commercial name that was used in connection with a
> business or assets that were confiscated . . .
> unless the original owner of the mark, trade name,
> or commercial name, or the bona fide successor-in-
> interest has expressly consented.

*Id.* § 515.527(a)(2).

## B. Application to Cubaexport

Bacardi argues that the "plain terms of the statute" bar
Cubaexport's Counterclaim because the HAVANA CLUB trademark is a
confiscated mark,[4] which was registered under the then-existing
general license from section 515.527. *See* Pls.' MTD, ECF No. 156

---

[4] In the appeal for Cubaexport's litigation against OFAC, the
D.C. Circuit held that the HAVANA CLUB mark was a "mark[] used
in connection with a business or assets that were
'confiscated.'" *Cubaexport II*, 638 F.3d at 797 n.2. Although
Cubaexport's Counterclaim alleges that its HAVANA CLUB mark was
obtained after the expiration of JASA's mark, *see* Countercl.,
ECF No. 154 ¶¶ 18-20; it does not argue—on this motion—that the
HAVANA CLUB mark is not connected to a "business or assets that
were confiscated."

11

at 13-14. Cubaexport resists this conclusion and argues that Section 211 does not apply to its counterclaim because "[t]he rights that Cubaexport asserts in its Counterclaim . . . are based on its 2016 trademark renewal, which was *not* obtained under Section 515.527." Def.'s Opp'n, ECF No. 159-2 at 20. The Court agrees with Bacardi.

Section 211 has two distinct components relevant to Cubaexport's HAVANA CLUB mark. Section 211(a)(1) bars registrations and renewals of trademarks that were "used in connection with a business or assets that were confiscated." § 211(a)(1), 112 Stat. at 2681-88. This is the provision that stripped the CACR of general licenses and required Cubaexport to apply for a specific license from OFAC to renew its rights related to the mark. *See Cubaexport II*, 638 F.3d at 797-98 ("Thus, because of the 1998 Act and its reference to 31 C.F.R. § 515.527, Cubaexport's trademark no longer fit within the regulatory exception for trademarks that had existed since 1963. . . . As a result of the 1998 Act, Cubaexport was prohibited from renewing its HAVANA CLUB trademark when it tried to do so in 2006."). As Cubaexport alleges, it applied for and received a specific license for renewal of the HAVANA CLUB mark from OFAC in 2016. *See* Countercl., ECF No. 154 ¶¶ 71, 73.

Cubaexport argues that this specific license takes it out of the purview of Section 211 altogether. But the second

12

applicable provision of Section 211, Section 211(a)(2), is not
focused on the ability of Cubaexport to register or renew its
existing rights, but rather addresses the court's power to
"recognize, enforce or otherwise validate" those alleged rights.
§ 211(a)(2), 112 Stat. at 2681-88. Under the plain terms of
Section 211(a)(2), courts cannot enforce any rights from
"registration obtained under . . . section 515.527 of . . . a
confiscated mark." *Id.* It does not carve out any exceptions for
marks that were *renewed* under a different provision. Rather, the
statute only bars certain mark holders from enforcing their
rights in the mark based on how that mark was registered. In
Cubaexport's Counterclaim, it asserts that it "obtained its
original registration [for the HAVANA CLUB mark] in 1976" under
the then-existing "general license in Section 515.527."
Countercl., ECF No. 154 ¶ 75. Thus, the plain language of
Section 211(a)(2) covers Cubaexport's rights in the HAVANA CLUB
mark.

Cubaexport resists the plain language of the statute and
argues that "[r]enewal of a trademark grants new rights distinct
from the rights under original registration" and that Cubaexport
is seeking to vindicate those rights with "forward-looking
injunctive relief." Def.'s Opp'n, ECF No. 159-2 at 22. For
support, Cubaexport cites the district court decision in its
litigation against OFAC and the D.C. Circuit's opinion on appeal

in that case. However, Cubaexport distorts the analysis of both opinions. First, as Cubaexport notes, in the OFAC litigation, the district court observed that "[t]his Court has already stated that there is a fundamental difference between a license to defend existing property rights . . . and one to acquire additional rights," citing the court's prior opinion on the issue. *Cubaexport I*, 606 F. Supp. 2d at 81. That opinion made the distinction in the context of defending an "*already-acquired* property right in [the] *existing* HAVANA CLUB registration" against an attempt to "renew the HAVANA CLUB mark and to thus *extend its rights in the mark for another ten years*." *Empresa Cubana Exportadora de Alimentos y Productos Varios v. U.S. Dep't of Treasury*, 516 F. Supp. 2d 43, 59 (D.D.C. 2007). Thus, the district court was not asserting that a trademark renewal automatically triggers "new rights distinct from the rights under the original registration," but rather was asserting that renewal provides "additional rights" in the form of an "extension" of the existing rights, which were acquired at the time of the original registration. *See id.*; *Cubaexport I*, 606 F. Supp. 2d at 81.

Second, Cubaexport claims that the D.C. Circuit's opinion on appeal from the OFAC case stated that "Section 211 only required a specific license for the acquisition of new rights, which were distinct from any rights existing under the original

registration." Def.'s Opp'n, ECF No. 159-2 at 23 (citing *Cubaexport II*, 638 F.3d at 799). Again, Cubaexport distorts the Court's analysis. The D.C. Circuit only stated that Cubaexport did not "acquire[] a vested right to renewal of the HAVANA CLUB trademark when it first registered the mark in 1976." *Cubaexport II*, 638 F.3d at 799. It went on to analyze the applicable regulations at the time Cubaexport "first registered its mark in 1976" and determined that the exception "allowing trademark registrations and renewals" could be amended, modified, or revoked at any time. *Id.* The Court never addressed, much less held, that a specific license would give "new rights, which were distinct from any rights existing under the original registration." All it concluded was that "[b]y its plain terms, [Section 211] bar[red] both new registrations and renewals of marks (such as Cubaexport's) that were first registered before 1998." *Id.* at 800.

To further support its claim, Cubaexport asserts that "[f]ederal courts have consistently treated references to trademark 'registration' as including 'renewal.'" Def.'s Opp'n, ECF No. 159-2 at 23. However, Cubaexport's support for this proposition is a line of cases interpreting 15 U.S.C. § 1064(3), the provision of the Lanham Act that allows a "registration" to be cancelled when it was "obtained fraudulently." *See id.* at 23-24. In *Torres v. Cantine Torresella S.r.l.*, 808 F.2d 46 (Fed.

Cir. 1986), the Court of Appeals for the Federal Circuit
("Federal Circuit") held that the term "'registration was
obtained fraudulently'" includes "when an applicant knowingly
makes false, material representations of fact in connection with
his application" in both registrations and renewals of
trademarks. *Id.* at 48. The Federal Circuit specified that the
"obligation to refrain from knowingly making false, material
statements applies with equal force to renewal applications,"
quoting the "requirements for renewal of a registration" at the
time. *Id.* Thus, *Torres* clarifies that in the specific context of
an attempt to cancel an existing trademark based on whether its
"registration was obtained fraudulently," the analysis includes
whether a "renewal" was obtained fraudulently based on the
specific obligations trademark holders must fulfill to renew
their marks. This conclusion does not support the broader
proposition that federal courts "have consistently treated"
registration and renewal interchangeably.

Further undercutting Cubaexport's position, several other
provisions of the Lanham Act treat registration and renewal as
distinct acts. First, under 15 U.S.C. § 1059, "Renewal of
Registration," the Lanham Act states that "each registration may
be renewed for periods of 10 years at the end of each successive
10-year period following the date of registration." 15 U.S.C.
§ 1059(a). Second, under 15 U.S.C. § 1064, "Cancellation of

16

Registration," the Lanham Act provides that a "petition to cancel a registration of a mark" may be filed "within five years from the date of registration of the mark." 15 U.S.C. § 1064(1). Thus, the Court does not agree with Cubaexport that "registration" can be understood to include "renewal" in "references to trademark" litigation and statutes. Rather, the Court concludes that registration and renewal are most commonly understood as distinct acts and registration can be understood to include renewal only in specific circumstances. Cubaexport fails to convince the Court that such circumstances exist in this case.

Finally, Cubaexport argues that Bacardi's interpretation of Section 211(a)(2) "also makes no sense as a matter of policy" because the interpretation "creates arbitrary distinctions and unreasonable results." Def.'s Opp'n, ECF No. 159-2 at 25. Specifically, Cubaexport argues that because it obtained its original registration under 515.527, under Bacardi's interpretation, it will be "permanently subject" to Section 211, regardless of any specific licenses OFAC grants. *Id.* Cubaexport argues that this interpretation "would create arbitrary and irrational distinctions between OFAC specific licenses issued at the time of initial registration and those issued at the time of renewal, relegating the latter to second-class status" and "undermin[ing] the apparent intent of Section 211 . . . to

17

preserve the Executive's authority to grant or refuse specific licenses for registrations and renewals of trademarks." *Id.*

Cubaexport's argument conflates the two distinct provisions in Section 211. The first provision—Section 211(a)(1)—prohibits renewals and registrations of marks without a specific license from OFAC. *See* § 211(a)(1), 112 Stat. at 2681-88. As Cubaexport alleged, it was able to circumvent this provision by obtaining a specific license by OFAC for renewal of its HAVANA CLUB mark. *See* Countercl., ECF No. 154 ¶¶ 71, 73. However, that renewal does not affect Cubaexport's rights under the second provision— Section 211(a)(2)—which bars courts from enforcing rights based on Cubaexport's original registration. *See* § 211(a)(2), 112 Stat. at 2681-88. Cubaexport's claim that following the plain terms of the statute would nullify the "Executive's authority to grant or refuse specific licenses for registrations and renewals of trademarks" is incorrect. OFAC granted Cubaexport a specific license—allowing it to renew its trademark. And Cubaexport used that specific license to renew its mark. *See* Countercl., ECF No. 154 ¶ 74 ("After receiving a copy of the specific license, the Commissioner of Trademarks . . . granted Cubaexport's Petition . . . and accepted the 2006 and 2016 renewals and the associated fee payments."). However, OFAC's action did not alter or amend Cubaexport's original registration—which, as the Counterclaim alleges, was obtained under Section 515.527. *See* Countercl., ECF

18

No. 154 ¶ 75.

Because the Court agrees with Bacardi that Section 211(a)(2) bars Cubaexport's counterclaim, the Court need not also determine whether Cubaexport's counterclaim should be dismissed for failing to adequately allege likelihood of confusion among consumers as a matter of law.

## IV. Conclusion

For the foregoing reasons, the Court **GRANTS** Plaintiffs' Motion to Dismiss Defendant's Counterclaim, ECF No. 156. An appropriate Order accompanies this Memorandum Opinion.

**SO ORDERED.**

**Signed:    Emmet G. Sullivan**
**United States District Judge**
**October 15, 2024**